## 481. ARNOLD *v.* EMPIRE MUTUAL ANNUITY & LIFE INSURANCE COMPANY.

1. Policies of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions of every contract of insurance will be strictly construed against the insurer who prepares and proposes the contract. If a policy of insurance is capable of being construed in two ways, that interpretation should be placed upon it which is most favorable to the insured, and, forfeitures not being favored, the court should be "prompt to seize hold of any circumstance that indicates an election to waive a forfeiture or an agreement to do so."

   (a) The payment of a premium on a policy of insurance in cash may be waived by the proper officers of the insurance company, and a note or other obligation may be accepted by its duly authorized officers in lieu of a cash payment.

2. The power to forfeit an insurance policy must be "nominated in the

bond." The failure to pay a promissory note, taken in payment of an insurance policy (although it is stipulated in the note that the non-payment of the same at maturity will avoid the policy), will not forfeit the policy, where there is no condition in the policy itself providing for its forfeiture for the non-payment of notes. "When the condition as to forfeitures for non-payment on maturity of a note given for the premium is contained only *in the note*, the mere fact that the note is not paid at maturity does not of itself avoid the policy. Such a provision is a condition subsequent, of which the company must avail itself by clear and unequivocal acts." "Where a company claims a forfeiture for non-payment of a premium note, it must offer to surrender the note. It can not forfeit the policy and keep the note." ·

(*a*) A provision for interest, in a note taken in lieu of the payment of a premium in cash, supplies consideration for the delay in payment of the premium, and is to be considered, as a circumstance, in determining the intention of the parties.

(*b*) The payment of the first premium renders the contract of insurance complete. A contract of life-insurance is generally a continuing contract, either during the life of the insured or for a term of years, and the payment of the annual premium (after the first premium is paid) is a *condition subsequent*, "the non-performance of which may or may not, according to circumstances, work a forfeiture of the policy."

(*c*) Where an insurance company accepts a note for the premium, the policy will be continued of force for the same length of time as if the amount represented by the note had been paid in cash, unless the contract of insurance contains an express stipulation to the contrary, or unless in the event of non-payment of the note at maturity the insurer asks a surrender of the policy and offers to surrender the note.

3. The beneficiary of an insurance policy has a vested right in the contract of insurance, which can not be diminished or affected by subsequent agreements between the insurer and the insured which are not stipulated or provided for in the original contract. The vested right of the beneficiary is subject to be divested only in accordance with express provisions of the contract, permitting a change of the beneficiary.

4. An insurance company may be estopped by the course of dealings between itself and the insured from denying the payment of a premium.

5. A formal tender is unnecessary where express declarations are made by the party to whom money is payable that he will not accept it if tendered. The law takes one who makes such a statement at his word; and does not thereafter require the doing of a vain thing.

6. Tender may be made by an agent or friend, at the instance of an interested party. Civil Code, § 3728.

7. A note accepted in payment of a premium is a separate and independent transaction,—an independent contract,—and has no relation to the contract of insurance, except as stipulated in such policy of insurance.

Action upon insurance policy, from city court of Atlanta—Judge Reid. May 1, 1907.

Argued October 14, 1907.—Decided February 24, 1908.

*Green, Tilson & McKinney,* for plaintiff.

*Tye, Peeples, Bryan & Jordan, Charles A. Read,* for defendant.

RUSSELL, J. The plaintiff in error brought an action on a contract of insurance issued by the defendant company on the life of her husband, Walter B. Arnold. The defendant demurred to certain portions of the petition, and its demurrer was sustained by the lower court, and exceptions pendente lite were filed to the judgment sustaining the demurrer. The case was then submitted to the judge, without the intervention of a jury, upon an agreed statement of facts, and a judgment was rendered, finding the company not liable on the contract of insurance. Exception is taken also to this judgment.

Plaintiff's petition set out, that on the 29th day of January, 1901, the Empire Mutual Annuity & Life Insurance Company issued and delivered to her husband a policy of insurance upon his life, whereby said company insured the life of said Arnold for an annuity of $600, and promised, upon receipt and acceptance of satisfactory proof of death of the insured, to pay petitioner, during the continuance of her widowhood, said annuity of $600, and, at her death or remarriage, to pay the said annuity to her minor children until they may die or reach the age of twenty-one years. It was further alleged in the petition that the premiums, according to the terms of the policy, are payable, $187.50 cash, payable one fourth on the 29th day of January, April, July, and October of each year, and that the policy further provides that "a grace of thirty days will be allowed in the payment of premiums hereafter due on this policy." The petition further alleged, that the full annual premiums for the years 1901 and 1902 had been paid in full to the company; that on the 22d of May, 1903, the company took a note from petitioner's husband for the balance then due for the 1903 premium, the note being for $181.50 and maturing October 15, 1903, and that there had been paid upon the note on March 7, 1904, the sum of $50. It was further alleged, that on the 7th of March, 1904, the company accepted from said Walter B. Arnold a note for the balance of the 1904 premium, to wit, the sum of $168.50, maturing October 1, 1904. Copies of the insurance policy and of the notes above mentioned were attached to the petition. In the 10th paragraph the petition alleged that Walter B. Arnold, the insured, was taken to his bed with typhoid fever,

688 ARNOLD v. EMPIRE INSURANCE CO. [3 Ga..

on September 5, 1904, and was totally and permanently disabled from that date, and died October 28, 1904. The 11th, 12th, and 13th paragraphs of the petition are as follows: (11) "That after the first day of October, 1904, and before the death of said Arnold, a friend and neighbor of said Arnold, while said Arnold was confined to his bed and too sick to know of or attend to any business (as he was practically ill all of the time from October 1, 1904, until the date of his death), offered to pay to Wm. W. Reid, the secretary of said insurance company, all of the unpaid premiumns due by said Arnold upon said policy; but the said Reid, after a conference with the other officers of said company, refused to accept the premiums on said policy." (12) "That when said above-mentioned note for $168.50 matured, on October 1, 1904, said Walter B. Arnold was extremely ill and had been forbidden by his physicians to attempt to attend to any business, and said Arnold did not know of the maturity of said note, as he was not in full possession of his mental faculties at that time or at any time from October 1, 1904, until the date of his death, by reason of said disease." (13) "That one Watterson, an employee in the cotton-oil mills of which said Arnold was superintendent, knowing that said Arnold had outstanding a note or notes for the premium upon said policy of insurance, but not knowing when said notes matured, and knowing that said Arnold's mental condition was such that he could not attend to said note and could not remember the maturity of the same, called upon one Thomas M. Calloway, an agent of said insurance company in the city of Atlanta, Georgia, authorized by said company to collect premiums for said company upon its policies of insurance, and told said Calloway of said Arnold's condition, before the maturity of said note for $168.50 on October 1, 1904, and requested said Calloway to ascertain when said note matured, which the said Calloway agreed to do, and also promised the said Watterson that he would call him (Watterson) up, and notify him when said note matured, as he had agreed to do; and said Watterson was thus prevented from paying said note for said Arnold, as he would have done, had said Calloway informed him of the date of the maturity." The 14th paragraph stated that the petitioner was the widow of said Arnold, deceased. The 15th paragraph is in the following words: "Petitioner stands ready and now offers to pay said two notes,

above set out, with interest, to wit, said note for $181.50 and said note for $168.50, less the credit of $50 on said first note, which said notes said company have refused to accept payment upon, as above stated, and your petitioner makes and offers to pay a continuing tender." The petition proceeds to aver that proper proofs of death, in accordance with the requirements of the policy, were furnished and delivered to the secretary of the company on January 25, 1905, but that the company refused to pay the first quarterly installment of $150; and judgment is prayed for that amount, with interest.

The defendant company demurred as follows: "(1) Paragraph 11 of the petition should be stricken because it is not alleged that there was any specific amount of money actually tendered, or that 'the friend and neighbor' was acting by authority from the insured. Besides, the allegations are immaterial and irrelevant. (2) Paragraph 12 should be stricken because immaterial and irrelevant. (3) Paragraph 13 should be stricken because: (a) Immaterial and irrelevant. (b) It appears from said paragraph that said Watterson was a mere volunteer and had no authority to act for the insured. (c) It is not alleged that said Calloway, as agent of defendant, was authorized to deal with such matters or had power to make any negotiations or promises, in the transactions complained of, that would be binding on defendant. (4) Paragraph 15 should be stricken because the facts alleged show it is not such a tender of money as the law requires; and besides, it is immaterial and irrelevant." The plaintiff offered an amendment to the 11th and 13th paragraphs of the original petition, but the court sustained the demurrer of the defendant, and struck paragraphs 11th, 12th, 13th, and 15th of the petition.

The defendant filed an answer denying liability on the contract of insurance, on the ground that one of the conditions of the policy of insurance was that if any premium was not paid on or before the day it was due, the policy became void; and set up, in its answer, that the note of May 22, 1903, contained a provision that if said note was not paid at maturity the policy should be ipso facto null and void; and that, contemporaneously with the acceptance of the note dated March 7, 1904, and as a part of the agreement, the company delivered to said Arnold a receipt specifying that the non-payment of the note due October 1, 1904,

44

would render the policy null and void and terminate all rights thereunder. The defendant company therefore insisted that by reason of the non-payment of the note due October 1, 1904, as well as by reason of the non-payment of the note which matured October 15, 1903, the policy sued on was void, and all rights thereunder had been terminated. Plaintiff demurred to the defendant's answer, but as to all material portions of the demurrer it was overruled by the court, and exception is taken to this ruling.

In the statement of the facts submitted to the presiding judge, it was agreed by the parties, that on the 29th day of January, 1901, the Empire Mutual Annuity & Life Insurance Company executed, issued, and delivered to W. B. Arnold the policy of insurance, a copy of which is attached to the petition, whereby said company insured the life of said Arnold for the consideration named in said policy for an annuity of $600, and promised, upon sufficient proof of death, to pay said annuity (payable quarterly), to be paid during the continuance of her widowhood, and that the premium specified to be paid was $187.50, the policy providing that said premium shall be paid in advance upon the delivery of said policy, and on or before the 29th day of January in every year until twenty full years have been paid, or until the prior death of the insured; said policy providing further that each policy holder has the right, at the time any premium falls due, to pay a quarterly or semi-annual premium, according to the company's schedule. If the yearly premium is not paid in full at the beginning of the policy year, but is paid in installments, all unpaid portions of said installments should be considered and charged against the policy. It was further agreed that the policy had the following entries upon it at the time it was delivered. "Premiums payable as follows: $187.50 cash, payable on 29th day of January, April, July, and October of each year;" and that the policy further provides that "a grace of thirty days be allowed in the payment of premiums hereafter due on this policy." It was admitted that the annual payments for the years 1901 and 1902 were paid in full to the company, and that the company took from Walter B. Arnold, on May 22, 1903, for the balance then due said company for the 1903 premium, his note for $181.50, maturing October 15, 1903, and that a payment of $50 was made

on this note March 7, 1904, and of $25 on April 17, 1904; that on the 7th of March, 1904, the company accepted from said Arnold a note for the balance of the 1904 premium on said policy of insurance, said note being for the sum of $168.50, maturing October 1, 1904. It was further agreed between the parties that the insured was taken to his bed with typhoid fever on the 5th of September, 1904, and became totally and permanently disabled from that disease from that date, and died on the 28th of October, 1904. It was likewise admitted that the petitioner was the widow of the insured, and that satisfactory proofs of death had been furnished and payment refused. It was further agreed, that one of the conditions of the policy of insurance is that "if any premium is not paid on or before the date it becomes due, the policy shall be void, and all payments previously made shall become the property of the company;" that the premium due January 29, 1903, on said policy was $187.50, less a dividend of $6, leaving $181.50 due by the insured, for which the insured executed the note dated May 22, 1903, the note providing that "this note is given for the amount of the premium due and payable January 29, 1903, on policy No. 1055 of said company. It is understood and agreed that in consideration hereof said policy is extended until default is made in the payment of this note, when all rights and benefits accruing thereby shall cease and determine without notice and said policy shall be ipso facto null and void. I hereby agree that this note shall not be deemed a payment for life insurance, but only for an extension of the time for the payment of the same, and the non-payment of this note when due, and determination of said insurance by reason thereof, shall not impair the validity of this note, but the same shall become due and payable for the proportion of its face and interest that the time the insurance has been extended bears to the whole time covered by said premium." The balance due on the note is still unpaid. It was further agreed between the parties that the next premium on the policy of insurance became due January 29, 1904, amounting to $187.50, less a dividend of $19, leaving a balance of $168.50 due, for which the insured, on March 7, 1904, executed a note payable October 1, 1904. It was admitted that contemporaneously with the execution and delivery of this note the company delivered to the insured a receipt which was accepted by him. The receipt

stipulates that on the payment of the note due October 1, 1904, on or before its maturity, the company's regular premium receipt will be delivered to Walter B. Arnold, and contains the stipulation that "the non-payment of said note at maturity will render said policy null and void and terminate all rights thereunder." It was also admitted, that all notice as to the payments of premiums was waived by the insured, and that the note was deposited in the bank, for collection, before its maturity, and that the bank mailed a notice of the maturity of such note to said Arnold, to which no response was made, and this note is still unpaid.

Four questions are raised by the record. The controlling question in the case is, whether the company waived the provisions of the policy which declare a forfeiture in the event that premiums are not paid when due; because, unless this be true, the three remaining points presented by the record need not be considered. In our consideration of this question, we start with the cardinal proposition that the contract shall be most strictly construed against the insurer, and influenced by the well-settled rule that forfeitures are not favored, and that courts will seize every opportunity to defeat a forfeiture. These principles are so well settled as to require no citation of authority.

It was uncontradicted that the first two premiums were paid. On the 29th of January, 1903, the third premium was not paid, and the company had the right, without any express declaration on its part, or without the necessity for any act, to hold the contract terminated, unless the insured availed himself of the thirty days of grace stipulated in the contract. This the insured did not do. Instead, however, of treating the contract as void and standing by the terms "nominated in the bond," it appears that the company, in the month of May, 1903, after the time when the insured could have made even a quarterly payment on the premium, elected to continue the contract by allowing the insured a $6 dividend, as if his policy had never terminated, and by taking his note for the remainder, due the subsequent October. It is true that this note provided that if it were not paid at maturity the policy should be avoided, but it is plain that the company abandoned its right to forfeiture on account of the non-payment of this note at maturity, if it possessed this right, because long thereafter it accepted payments on the note, and in taking the second

note treated the first note merely as a debt which it was entitled to collect, regardless of the policy, but as payment of the premium for 1903, because when the company took the note representing the amount of the premium for 1904, it deducted therefrom $19 as a dividend due to the insured as a policy-holder in good standing. The company might have declared the policy avoided for the non-payment of the first note at its maturity, and as it might still have held the insured as maker of the note, for the proportionate part thereof equal to the portion of the premium for 1903 which accrued up to the date of the maturity of the note, this would not of itself have shown that the company waived its right to forfeit the policy or that it had not availed itself of that right. But the allowance of the dividend of $19, earned upon the policy for the year 1903, estopped the company from asserting that the policy became forfeited by reason of the non-payment of the first note at its maturity. Having treated the insured as a policy-holder in good standing, in the allowance of the dividend, the company will not thereafter be heard to assert that the note was not deemed as evidence of a debt, and that the premium, as such, had not been paid,—in other words, the company will not be heard to say that the note had not been accepted in lieu of a cash payment, and substituted therefor for all purposes beneficial to the insured. The first note, therefore, cuts no figure in the determination of the case.

On January 29, 1904, the deceased should have paid a fourth premium. But, as in the previous year, he did not pay on the day set for payment, nor within the thirty days of grace allowed, either in whole or in part, by quarterly or semi-annual payment, and the company again had the absolute right, under the express provisions of the contract, to treat the contract as terminated and totally void. Instead of attempting to pursue this course, however, the company again took from the insured a promissory note, due October 1, 1904, for the remainder of the premium which should have been paid January 29 previous, after deducting the dividend for the previous year. This note did not contain the provision that non-payment of the note at maturity would void the policy, but a contemporaneous receipt accepted by the insured contained this stipulation, and rendered that stipulation as effectual as if it had been incorporated in the note itself. Before maturity

of this latter note, the insured became seriously sick and totally disabled, a condition provided for in the policy. This disability, however, can be of no avail to the beneficiary of the policy, for the reason that the benefits derivable from the condition of total disability depended upon another stipulation of the policy, which was not complied with by the insured.

When the insured died the case stood thus. The insured had given a note, and accepted a contemporaneous receipt providing for a forfeiture of the policy if his note was not paid at maturity, which (as we have held before) was just as effectual for the purposes intended as if the provision of the receipt had been incorporated in the note. This note, however, represented the premium on the policy until January 29, 1905, a date three months subsequent to the death of the insured. It may be questioned whether, under the course of dealings between the parties, in view of the fact that the policy of insurance did not require its forfeiture for the non-payment of the notes, it would have been forfeited in case the insured had lived, but certain it is that it can not be held to have been forfeited so far as the beneficiary is concerned. When the first premium was paid upon the policy the contract not only became complete between the insurer and the assured, but the beneficiary obtained a vested right in the contract, which could neither be defeated nor affected by subsequent contracts made between the insured and the insurer, in which she did not participate. It can not be questioned that if the original contract of insurance (which is evidenced by the policy and all papers contemporaneous therewith and attached thereto as a part of the contract of insurance) had provided that non-payment of *notes* taken in lieu of premiums should work a forfeiture of the policy, non-payment of this note due October 1, 1904, would have rendered the contract null and void. But such is not the stipulation of the policy now under consideration. It simply provides that if the premium is not paid at maturity, the policy shall be avoided. In other words, the policy, except for the waiver of the company, was voidable, if not void, when the last note was taken. When, however, the company elected to waive the payment of the premium in cash, and took a note in lieu of cash, it did something it had the power to do, and the effect of its action was (so far as the beneficiary is concerned) to complete the payment of the pre-

mium up to January, 1905, which was more than three months after the death of the deceased.

We conclude, therefore, that so far as the beneficiary under the contract of insurance is concerned, the contract was valid and enforceable at the time of the death of the insured, with the right on the part of the company, under a provision of the policy (which seems to recognize and foresee just such contingencies as this), to retain the amounts due it which are represented by the notes. Our decision rests upon four well-established principles: (1) Conditions and provisions contained in a contract of insurance will be strictly construed against the insurer. (2) The giving of a note by the insured for a premium, and acceptance of such note by the insurer, is equivalent to a cash payment, and default in payment of such note at maturity will not work a forfeiture of the policy, unless the original contract of insurance, as well as the notes, contains a stipulation to that effect. (3) The beneficiary of a contract of insurance having a vested right therein, the rights of such beneficiary can not be affected by any acts or dealings between the insurer and the insured which may tend to engraft new conditions upon the contract of insurance, without the consent of the beneficiary. (4) Further, any agreement or course of action on the part of the insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, will estop the company from insisting upon the forfeiture, though it might be claimed under the letter of the contract.

1. In our decisions in *Missouri Insurance Co.* v. *Lovelace*, 1 *Ga. App.* 446 (58 S. E. 93), *North British Insurance Co.* v. *Tye*, 1 *Ga. App.* 380 (58 S. E. 110), and *Athens Ins. Co.* v. *Toney*, 1 *Ga. App.* 492 (57 S. E. 1013), this court has committed itself to the position that policies of insurance will be liberally construed in favor of the object to be accomplished, and that the conditions and provisions of every contract of insurance will be strictly construed against the insurer who prepares and proposes the contract. To use the language of the Supreme Court in *Mass. Life Association* v. *Robinson*, 104 *Ga.* 256 (30 S. E. 918), "if a policy of insurance is capable of being construed in two ways, that interpretation must be placed upon it which is most favorable to the insured." The construction of the policy in the present case is

not really involved, except for the contention by which the defendant endeavors to include within its terms more than is therein expressed.  As Justice Bradley remarks, in delivering the opinion of the United States Supreme Court in Insurance Co. *v.* Norton, 96 U. S. 234, and again, in delivering the opinion of the court in Insurance Co. *v.* Eggleston, 96 U. S. 577, "forfeitures are not favored in the law; and courts are always prompt to seize hold of any circumstance that indicates an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract.  The company is thereby estopped from enforcing the forfeiture."

The question as to the extent of the authority of an agent of the company to waive the prompt payment of the premium on the day upon which it is due, or the like authority on the part of an agent to waive payment in cash, or to accept an evidence of debt in lieu of cash payment, does not enter into this case, for it is stated in the agreed statement of facts that both the notes given by the insured for premiums were taken and accepted by the defendant company itself, and it is well settled that the proper officers of an insurance company can waive the payment of premiums in cash.

The contention of the defendant in error is, that the receipt which was accepted by the insured contemporaneously with giving the note provided that the policy should be void unless the note was paid at maturity, and that as the note was not paid at maturity, the policy itself was thereby avoided.  It has been frequently held in this State that where the *policy* contained the stipulation that when notes given in payment of premiums were not paid at maturity, the policy should be null and void, and that the non-payment of such notes worked a forfeiture of the policy.  *Sullivan* v. *Indemnity Association,* 101 *Ga.* 809 (29 S. E. 41).  This holding is absolutely correct, because in such cases the payment of the note is one of the conditions of the contract—conditions precedent to its creation.  But it is quite another thing to hold, in the

absence of such a stipulation in the contract (as in this case), that the taking of such a note *subsequently* will engraft this condition, prejudicial to the rights of the insured and to the vested interest of the beneficiary, upon the policy. Such a holding would be diametrically opposed to the general rule that forfeitures are not favored. Instead of construing the contract most favorably to the insured and more strongly against the insurer who prepared and proposed the contract, such a ruling would be equivalent to making a contract more favorable to the insurer than he himself proposed, and be tantamount to removing from consideration an act by which the insurance company estopped itself from denying the validity of the policy.

2. So far as we have been able to discover, in every case where it has been decided in this State that the non-payment of premium notes forfeited the policy of insurance, the policy itself contained an express stipulation to that effect. The exact question whether a policy, not containing a provision for a forfeiture upon the non-payment of notes given for premiums, shall be avoided because notes containing such stipulation and accepted by the company for the premiums in lieu of a cash payment are not paid has, so far as we can find, never been decided in this State. But many courts of the highest standing have held that where a promissory note is taken in payment of a premium, the failure to pay the note will not forfeit the policy, although it is so stipulated in the note,—and such is the doctrine of the text-books on insurance,—when there is no condition *in the policy* providing for forfeiture on the non-payment of notes. "When the condition as to forfeiture for non-payment on maturity of a note given for the premium is contained only in the note, the mere fact that the note is not paid at maturity does not of itself avoid the policy. Such a provision is a condition subsequent, of which the company must avail itself by clear and unequivocal acts. It must demand payment at the proper time, and, if no payment is made, it must declare the policy void." Joyce on Insurance, §1211. So also it is said in May on Insurance, §345 E: "If there is not a stipulation to that effect, failure to pay a premium note at maturity will not defeat the policy. And a stipulation in the premium note itself, that its non-payment shall avoid the policy (no such provision being contained in the policy), is nugatory. Where a com-

pany claims a forfeiture for non-payment of a premium note, it must offer to surrender the note. It can not forfeit the policy and keep the note." "In the absence of a stipulation in the contract, for forfeiture or suspension of the risk, or similar condition in case of non-payment of a note given for the cash premium when due, payment is not a condition precedent to the validity of the policy, and it continues in force notwithstanding the note is not paid at maturity, even though the policy provides that if the *premium* be not paid when due, the insurance policy shall become forfeited and void." Joyce on Insurance, §1212. And this conforms to the rule stated by Emerigon (Emerigon on Insurance, Meredith's ed. 1850, c. 111, sec. 7. p. 70), who says that if the credit is given for the premium, there being no stipulation for forfeiture, default in payment at the time agreed does not operate as a rescission of the contract, unless there be a custom at the place of contract to the contrary.

When the first premium was paid the contract was complete. *Hipp* v. *Fidelity Ins. Co.,* 128 *Ga.* 491 (57 S. E. 892). And unquestionably at that time the rights of the beneficiary were vested. This principle has been settled in this State ever since the decision in *Smith* v. *Head,* 75 *Ga.* 755; it was impliedly recognized in *Cason* v. *Owens,* 100 *Ga.* 143 (28 S. E. 75), and was expressly reaffirmed in *Perry* v. *Tweedy,* 128 *Ga.* 402 (57 S. E. 782). If the policy itself had provided for a forfeiture upon non-payment of the note given for premiums, that effect must be given to the contract. But many courts of last resort have held, as we think justly, that where the policy itself (as in this case) contains no such stipulation, such a condition contained in a promissory note, given for a premium, will not be engrafted upon the prior contract of insurance.

In Insurance Co. *v.* Hardie, 37 Kan. 674, where a note given in payment of a premium on a policy contained a stipulation for a forfeiture of the policy because of the non-payment of the note at maturity "as provided in the policy," and the policy itself did not provide for a forfeiture on account of the non-payment of the note, it was held that the condition of forfeiture, mentioned in the note, was nugatory. In McAllister *v.* Ins. Co., 101 Mass. 588, in which there was a provision in the policy, as in this, that it should be void for the non-payment of any *premiums,* the court

say: "This policy does not provide that it shall be avoided or forfeited upon the failure to pay any note or obligation given for a premium, and differs in that respect from the cases of Pitts v. Berkshire Ins. Co., 100 Mass. 500, and Roberts v. New England Ins. Co., 1 Disney (Ohio), 355." In the McAllister case, as in this, the company retained the notes and the assured the policy, and he died without paying the notes, and, on the contrary, positively refused to pay them. On this subject, Justice Gray, delivering the opinion, said: "In this case the company, while declining to accept payment of the notes on account of the sickness of the assured, did not return or offer to deliver the notes." In Cline v. National Benefit Association, 111 Ind. 462, the court, holding that the failure to pay the note taken in payment of a premium will not forfeit the policy, although it was so stipulated in the note, cites Franklin Ins. Co. v. Wallace, 73 Ind. 7; N. W. Life Ins. Co. v. Little, 56 Ind. 504; Hill v. Life Ins. Co., 39 Wis. 397; Phœnix Life Ins. Co. v. Doster, 106 U. S. 30; Insurance Co. v. Dutcher, 95 U. S. 269; Ohde v. Mutual Ins. Co., 40 Iowa, 357; Insurance Company v. Bonner, 36 Ohio State, 51; National Benefit Association v. Jackson, 114 Ill. 533.

In considering the effect of the non-payment of a note taken for the payment of a premium, as a separate contract apart from the policy, it is to be borne in mind that the payment of the first premium completes the contract of insurance; that the contract of insurance is not for one year, but for the life of the insured or a term of years; that the insurance company has the right to take notes (either the notes of the assured or of any other person) in payment of annual premiums; that the company can, at its pleasure, include or omit from the contract of insurance which it prepares and proposes a stipulation providing for a forfeiture of the policy upon the non-payment of such notes, but that after all, the payment of the annual premium, after the first premium is paid, is a condition *subsequent* "the non-performance of which may or may not, according to circumstances, work a forfeiture of the policy." Thompson v. Ins. Co., 104 U. S. 252.

Nothing contrary to this principle is ruled in any of the cases cited by counsel for defendant in error. In *National Life Asso.* v. *Brown,* 103 *Ga.* 382 (29 S. E. 927), the contract of life-insurance itself stipulated that "if all stipulated payments or *notes*

are not paid on or before the day when due, then, and in either event, this contract shall become null and void;" and the Supreme Court, in holding that "a failure by the insured to pay, on or before its maturity, a promissory note given for the first premium worked a forfeiture of the policy," was merely enforcing the contract as made by the parties. In *Sullivan* v. *Indemnity Asso.*, 101 *Ga.* 809 (29 S. E. 41), the same is true because the policy contained a condition that "in case any note, check or draft, given in payment or part payment of money due the association, shall not be paid at maturity, this policy lapses in the same manner as it would had the payment not been made when due." We should hold, did the policy in the present case contain such a stipulation, just as the Supreme Court did in the *Sullivan* case, that the plaintiff would not be entitled to recover. But this policy contains no such condition, and furthermore, the default in both the above cases was as to the payment of the first premium. The point now under consideration was not involved in the decision in *Bank of Commerce* v. *N. Y. Life Ins. Co.*, 125 *Ga.* 552 (54 S. E. 643), but upon examination of the original record in that case we find that while the policy is incontestable after the first year, still the benefits to accrue, either in extended insurance or for paid-up insurance, are expressly precluded if there is any indebtedness to the company, as well as if the premiums are not duly paid. In other words, the contract provides for a forfeiture in case of a certain indebtedness to the company, although the policy is non-forfeitable for non-payment of the premium. The policy seems to recognize that though the premium may have been paid, another form of indebtedness may be created instead of the premium (such as taking a note for a premium), and in this event the company expressly reserves the right not to extend the insurance, as it agrees to do upon mere non-payment of a premium. The first condition of that policy is as follows: "First, if any premium is not duly paid, and *if there is no indebtedness* to the company, this policy will be endorsed for the amount of insurance specified in the table on the second page hereof, on written request. . . If no such request is made the insurance will automatically continue for the term specified in said table and no longer." In Knickerbocker Life Ins. Co. *v.* Pendleton, 112 U. S. 696, the case turned upon whether the lower court erred in holding that the same dili-

gence and the performance of the same acts were required on the part of the insurance company as the holders of a draft or bill given for the payment of a premium, in order to work a forfeiture of the policy of insurance, as were required of them to make the drawer liable upon it. Outside of this question the beneficiaries of the policy were not in a position to claim any benefits under the policy, because the policy itself was conditioned to be void if any obligation given in payment of an annual premium was not paid at maturity.

In Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, which is cited by counsel for defendant in error, we are unable to find any withdrawal of the approval of the Supreme Court of the United States of the decision in Insurance Co. v. French, 30 Ohio State, 240, as contained in Thompson v. Ins. Co., 104 U. S. 252, so far as the principle now under consideration is concerned. In the Lewis case, on page 248, Justice McKenna, after holding that the payment of the premium can be exacted simultaneously with the delivery of the policy, and discussing at some length the question as to whether the receipt for the premium, delivered concurrently with the delivery of the policy itself, constituted part of the contract, proceeds to say, that it was contended in the Thompson case, supra, that "the mere taking of notes in payment of the premium was, in itself, a waiver of the conditional forfeiture, and Insurance Co. v. French, 30 Ohio St. 240, was cited to support the contention." Justice McKenna then proceeds to say: "To the contention and citation it was replied [quoting the language of Justice Bradley on p. 257 in the opinion in the Thompson case]: 'But, in that case [the French case], no provision was made in the policy for a forfeiture in case of the non-payment of a note given for the premium, and an unconditional receipt for the premium had been given when the note was taken; and this fact was specially adverted to by the court. We think the decision in that case was entirely correct. . . But in this case the policy does contain an express condition to be void if any note given in payment of premium should not be paid at maturity. We are of the opinion, therefore, that whilst the primary condition of forfeiture for non-payment of the annual premium was waived by acceptance of the notes, yet, that the secondary condition thereupon came into operation, by which the policy was to be void if the notes were

not paid at maturity." Justice McKenna, next stating that a review of the French case is demanded, asks: "What, then, did this court mean by pronouncing the decision in Insurance Company *v.* French as 'entirely correct?' Were the various principles of law expressed in that case approved, or only the conclusion of the court from the facts? Did this court intend to approve the proposition that to cause a forfeiture some affirmative action was necessary by the company,—a declaration to that effect and the surrender of the premium notes? To hold the latter would be to hold that this court intended to reverse a number of decisions made upon careful consideration. Indeed, it would be contrary to the reasoning in the very opinion in which the French case is approved." All of the remainder of the opinion is then directed to the proposition that under the holding of the Supreme Court of the United States, it is not necessary for the company to take affirmative action either upon the non-payment of a premium or upon the non-payment of an obligation given for the payment of a premium, in order to declare a forfeiture. But the conclusion that the Supreme Court of Ohio, in the French case (where, as in this case, the policy did not provide for a forfeiture for the non-payment of notes), had decided correctly is not even inferentially disapproved, nor the ruling in the Thompson case, supra, overruled. The decision in the Lewis case is really not in point, because, unless the note had been paid there had been no payment of the first premium and the contract had not become operative. The note for the premium being given contemporaneously with the policy and the receipt for the premium, all would be construed together as constituting parts of a single contract. Where a promissory note is given contemporaneously with a written agreement which states the consideration of the note, the two instruments constitute one contract and are to be construed together. *Montgomery* v. *Hunt,* 93 *Ga.* 438 (21 S. E. 59); *Anderson* v. *Brown,* 72 *Ga.* 713 (2); *Marietta Savings Bank* v. *Janes,* 66 *Ga.* 286 (1).

We are satisfied, therefore, that our holding that the non-payment of the second note at maturity, although the receipt wrote into it the provision contained in the receipt, did not avoid this policy, which contained no such condition, is not only in accord with justice and a proper construction of the contract of insur-

ance, but that there is no ruling of the Supreme Court of this State or of the United States to the contrary. In addition to the cases already cited, see also Lawrence v. Penn Mutual Ins. Co., 113 La. 87 (36 So. 898) ; Frager v. Louisiana L. Ins. Co., 37 La. Ann. 235; Ins. Co. Booker, 9 Heisk. (Tenn.) 606; Kansas Pro. Union v. Whitt, 36 Kans. 760.; New England Mutual Fire Ins. Co. v. Butler, 32 Me. 451; Insurance Co. v. Hasbrouck, 32 Ind. 447; American Ins. Co. v. Harley, 60 Ind. 516; Shaw v. Ins. Co., 69 N. Y. 286; Ins. Co. v. Barracliff, 45 N. J. 543; Elliott on Insurance, §130. To use the language of the Supreme Court of Louisiana in Lawrence v. Penn Mutual Ins. Co., supra, we hold, that "unless it be stipulated in the policy or in some way in the contract of insurance that forfeiture is to be immediate in the event the note is not paid, no such result can follow its non-payment. The power to forfeit or cancel must be 'nominated in the bond.'" The facts of this very case can be instanced to show the effect of a contrary holding. The company, in its course of dealing with the insured, did not take a note for the portion of the premium which would be necessary to continue the insurance in force up to the date of maturity of the note, but instead took a note, with interest thereon, payable for the whole premium up to January 29, 1905, when another premium would be due; and if the policy can be considered to be forfeited because of the non-payment of the note at maturity, the company would still have in its possession a note upon which, if the estate of the insured is solvent, it could collect principal and interest for more than three months time, for which it gave—*nothing.*

In construing the dealings between the assured and the insurer, it can rather be inferred (if the sickness of the deceased had not intervened) that the company would have taken another note, for the payment of the premium to become due January 29, 1905, than that it would have insisted upon an assumed right of forfeiture on the first day of October, if the insured at that time had been in perfect health.

The fact that the note taken for the premium which fell due January 29, 1904, provided for the payment of interest is not without significance. The inclusion of a charge for interest in a note taken for a premium is adverted to by the Supreme Court of Michigan in Ins. Co. v. Bowes, 42 Mich. 19, in which the princi-

ple is announced that "where interest-bearing notes are taken in-
stead of a cash payment, it is a legal presumption that the trans-
action was for the interest of the party taking them." The Bowes
case is very similar as to its facts to the present case. The policy
stipulated to pay Mrs. Mary E. Bowes $10,000 on the death
of her husband, in consideration of the payment of a fixed annual
premium. The first and second premiums were paid, a note was
given for the third premium, less certain allowances, and a note
was taken for the fourth premium, as in this case, and, as in this
case, neither note was paid prior to the death of the insured, and
both were past due. If the third and fourth premiums had been
paid in cash, Mrs. Bowes was entitled, by the terms of the con-
tract, to a paid-up policy for the amount the surrender value would
purchase as a single premium. The fifth premium was not paid,
nor any note or other security given for it, though Mr. Bowes, the
insured, was at that time in life. Before his death the beneficiary
tendered a surrender of the policy and demanded a paid-up policy
for the surrender value. The company refused to agree to it
while the notes remained unpaid. Speaking for the court, Cooley,
Justice, says: "Although it is conceded that the taking of this
paper was for the accommodation of the insured, it is nevertheless
a legal presumption that the insurer found it to its interest to
make the arrangement; so that the delay in the payment in consid-
eration of the promise to pay interest is to be considered as agreed
upon for the mutual advantage of the parties. And had the notes
been paid at any time prior to the demand for a paid-up policy,
it can not be disputed that Mrs. Bowes would have been entitled to
receive it. But although the notes were not then paid, the insurance
company had an undoubted right to proceed and collect them, to-
gether with the interest, which was the legal inducement for giv-
ing credit. The company might also have sold them; and this,
as between the company and Mrs. Bowes, would have been equiva-
lent to collection. And the notes, so far as we know, remain in
the hands of the company as its property to this day, and may be
collected from the estate of Mr. Bowes if that is solvent. Under
these circumstances we are of the opinion that the insurance com-
pany is precluded from denying that the notes were taken in pay-
ment for the premiums." The court then proceeds to hold that
the taking of the note was a renewal of the policy, until Novem-

ber 16, 1877, and that under no circumstances could there be a forfeiture prior to that date, and adverts to the fact (which is true of many policies of insurance), that Mrs. Bowes had an interest in the policy for a paid-up policy, if for any reason the payments were not kept up, proportioned to the amount paid.  Concluding, Justice Cooley says, "Suppose that Mr. Bowes were still living, and that his notes should now be collected; it is manifest that the company would then receive the full benefit of the contract on its side, including full consideration for the delay, but that the insured would be wholly deprived of the benefit promised to her in a surrender policy, if any other view were taken than is here adopted. . . If in this particular case the company proves to be a loser in consequence of the insolvency of the maker of the notes, it is a result that can be provided against in the future by express stipulations."  As we view it, the language of Justice Cooley is equally as applicable in the case at bar as it was in the case before the Supreme Court of Michigan.

3.  The beneficiary of this policy had a vested right in the contract, which could not be diminished by any subsequent agreement between the insurer and the insured, not provided for in the contract, and subject to be divested only by a change of the beneficiary. *Perry* v. *Tweedy,* 128 *Ga.* 401.  This vested right could not be divested, under the terms of the contract of insurance, except "by filing with the company a written request, duly acknowledged by the company and accompanied by this policy, such change to take effect upon the endorsement of the same upon the policy by the company."  This is the only method provided by the contract for changing the beneficiary named therein.  The plaintiff then had a vested right in the policy, according to its written terms and conditions, without her rights being affected by any subsequent terms agreed to by the insurer and the assured.  It was lawful for the insurance company to take the note as payment for the premium, and the note itself says it was given for that purpose.  But even if the stipulation in the receipt, that the policy should be void upon the non-payment of the note at maturity, would be binding upon the assured, the rights of the beneficiary could not be changed in this way, and the acceptance of the notes by the company was equivalent to the payment of a premium.  Having taken the note without the consent of the beneficiary, the company will

be estopped to deny the receipt of the payment on this policy, which had been rendered a complete contract by the payment of the first premium.

As held by the Supreme Court in *Mass. Life Ins. Co.* v. *Robinson,* supra, "the note having been accepted in payment of the premium, it would seem that it became then a separate and independent transaction and had no further relation to the contract of insurance." Justice Cobb, delivering the opinion in the case last cited, proceeds to say, "especially would this be true in the present case, where there was no stipulation in the note that the contract should become forfeited upon failure to pay the note at maturity," and cites May on Insurance, §345 E, and Joyce on Insurance, §1202; but it is plainly to be seen that it was not held that a stipulation in the note that the contract should become forfeited · upon failure to pay the note at maturity would have that effect *in the absence of a stipulation to that effect in the policy* as in this case; for that question was not then before the court.

The authorities in this country differ upon the question whether the beneficiary of a policy of life-insurance has or has not a vested interest therein. Some hold that a life policy and the money that may become due on it belongs, the moment it is issued, to the beneficiary, and that his right can not be affected by an act of the assured subsequent to the execution of the policy, except it be a breach of condition. See Pingrey v. Ins. Co., 144 Mass. 374 (11 N. E. 562) ; Bayse v. Adams, 81 Kan. 268; Weisert v. Muehl, 81 Kan. 336; Willmasser v. Continental, 36 Iowa, 417; Allis v. Ware, 28 Minn. 166; Savings Bank v. Whittle, 63 N. H. 587; Hooker v. Suggs, 102 N. C. 115, 120; Life Ins. Co. v. Baldwin, 15 R. I. 106; Cline v. National Benefit Association, 111 Ind. 462. In other States, such as Illinois, Michigan, and Indiana, it is held that where the policy provides for a change of beneficiary, without the consent of the former appointee, the person first designated acquires no vested interest during the life of the insured, but only an expectancy. The true rule would seem to be that laid down by May on Insurance, §399 O, that "if there is express provision for change, or the original contract is of a character that shows that it was not irrevocable, or subsequent permission is obtained from the beneficiary, or the beneficiary dies before the assured and there is no provision inconsistent with a new appointment, a new desig-

nation may be made in the mode prescribed, but courts lean to upholding a designation, if clear, though defective in form." Those courts which hold 'that the interest of the beneficiary, during the life of the insured, is merely an expectancy, where the insured has the right to change the beneficiary, hold, nevertheless, that the change must be made in strict conformity with the provisions of the policy upon that subject, in order to divest the interest of the beneficiary named therein.

We have heretofore alluded to the fact that the policy in this case provided for a change of beneficiary, but that the right of the plaintiff in error was not divested by any attempt to comply with this condition of the contract. That the beneficiary of a contract of life-insurance has a vested right in the contract (though it may be divested by the selection under the special provision of the contract of a new beneficiary) admits of no question. In *Smith* v. *Head, 75 Ga. 757*, the point was squarely presented and decided. In that case, Chief Justice Jackson, delivering the opinion, says: "This policy, payable at her husband's death, is her property. The policy is payable to her then. It is as much hers as any other property can be, as any note payable in the future, or any fee in remainder, or any other property not to be used by her until a certain event transpires." And it was held that it was immaterial whether a transfer of the policy made by her for the purpose of paying the debt of her husband was made before or after his death, as, in either event, the policy was the property of the wife.

4. We think, too, that under the agreed statement of facts the company was estopped by the taking of the notes, and by the course of dealings between itself and the assured, as disclosed by the record, from denying that the note was taken in payment of the premium for the entire period up to the 29th of January, 1905. The amount for which the note was taken, the fact that allowance was made in favor of the insured for a dividend, the fact that interest was charged upon the note, and the fact that a note was taken by the company for a second time, after the policy, by the strict letter of its terms, could have been declared forfeited, as well as the fact that it does not appear that the company has either asked the surrender of the policy or offered to return the notes, all tend to show that the company, after having made a contract which it deemed to be advantageous to its interest, and which it was not

required to make, under the terms of the policy, has derived a benefit from the revival of the contract and the taking of the notes, which, so far as the beneficiary of the policy is concerned, can only be equalized by applying the amount represented by the notes as a payment on the premium for such a time as such payment would have extended had cash been paid instead of the notes accepted.

5. The tender to pay notes was obviated by the refusal to accept payment. No formal tender is necessary where express declarations are made by the party to whom money is payable, that he will not accept it if tendered. The law takes one who makes such a statement at his word, and does not thereafter require one who is willing to pay to do a vain thing. *Biggers* v. *Pace,* 5 *Ga.* 172 (4); *Baynes* v. *Bernhard,* 12 *Ga.* 150; *Hunt* v. *Formby,* 43 *Ga.* 79 (7); *Ansley* v. *Hightower,* 120 *Ga.* 719 (48 S. E. 197); 25 A. & E. Ency. L. (2d ed.) 904; *Jackson* v. *Jacob,* 3 Bing. N. C. 874. An offer to pay was made in the present case to the secretary of the company, and, after consideration of the same, the company refused to accept payment of the note.

6. One of the demurrers of the defendant company was based upon the proposition that the alleged tender was made by a volunteer, and therefore was of no effect. The petition alleged that the offer to pay the notes was made by a friend, and at the instance of the beneficiaries. The code expressly declares that a tender may be made by a friend as well as by the party in interest himself, and, for this reason, it was error to sustain this demurrer.

7. We do not think it was error to strike the 13th paragraph of plaintiff's petition, in which it was alleged that an agent of the company promised Mr. Watterson, a friend of the insured, to telephone him when the note given for the premium was due. It was not alleged that the promise related to a premium. The conversation related to a note. It has been held that an agent may waive the conditions respecting forfeiture for non-payment of an installment, and agree to give notice when each payment is due, and failure of such notice will excuse payment (May on Insurance, §360 C; Elliott on Insurance, §168 a; Phœnix Ins. Co. *v.* Tomlinson, 9 L. R. A. 318, note); but this is not a case of non-forfeiture for default in paying the premium. The premium was paid when the note was taken.        *Judgment reversed.*