## 6968. SIMS *v.* JEFFERSON STANDARD LIFE INSURANCE COMPANY.

Ordinarily the failure of the insured to pay at maturity a promissory note given by him, and accepted by the insurer, for a premium on his policy of life insurance, will not ipso facto cause a forfeiture of the policy, although there be a stipulation in the note that if it is not paid at maturity the policy will be forfeited, where there is no provision in the policy itself that it will be avoided for the non-payment of any note

given for premium. In such a case, when the policy lapses on account of the non-payment of the note, before the policy can be avoided the unpaid note must be returned to the insured. The insurer can not keep the note and avoid the policy.

(a) Where, however, the unpaid note contains the express stipulation that "if not paid at maturity it will automatically cease to be a claim against the maker," the policy may be avoided without returning the note.

DECIDED JUNE 30, 1916.

Action on insurance policy; from city court of Carrollton— Judge Beall. October 15, 1915.

*S. Holderness,* for plaintiff.

*Bryan & Middlebrooks, Boykin & Boykin,* contra.

BROYLES, J. On June 15, 1910, Gus T. Blount took out a policy of insurance on his own life for $1,000, in the Jefferson Standard Life Insurance Company. Hattie Blount, who was then his wife, was made the beneficiary. The annual premium was $31.01, and the policy provided that "this contract shall not be in force until the premium of $31.01 shall have been paid to the company or its agents, said sum constituting payment for the insurance for the period ending on the date first written on the first page hereof (June 15, 1911), and may be extended thereafter, provided, that, on or before said date, and on or before the 15th day of each June thereafter during the life of the insured, there shall be paid to the company in renewal hereof the sum of $31.01 until twenty full years' premiums in all have been paid." The first and second annual premiums, due respectively June 15, 1910, and June 15, 1911, were paid. The company acknowledged the receipt of the annual premium due June 15, 1912, but the undisputed evidence showed that it was paid by executing a note to the company, as follows: "$31.01 Bowdon, Ga., June 15, 1912. On or before the 15th day of June, 1913, I promise to pay Jefferson Standard Life Insurance Company, or order, the full sum of thirty-one and one/100 dollars ($31.01), with interest thereon from date till paid, at the rate of six per cent. per annum, both principal and interest payable at the office of the said company in the city of Greensboro, N. C. This note is a lien upon Policy No. 6638-J, issued on the life of G. T. Blount. It is understood and agreed: 1. That this note may be renewed, if the interest thereon and subsequent premiums on said policy are duly paid. 2. That if any premium on said policy, or interest on this note, is not paid

when due, this note shall thereupon immediately become due and payable, with interest, and shall, without notice of any kind, be paid by deducting the amount due thereon from the sum which by the terms of said policy is applicable to the purchase of insurance in the event of non-payment of premium or interest when due, the balance only of said sum, if any, to be available for the purchase of insurance under and pursuant to the non-forfeiture provisions of said policy. 3. That in the settlement of any claim or any benefit under said policy before this obligation shall have been fully paid the amount of this note shall be deducted from the amount otherwise available by said company. Signature of the person whose life is insured. G. T. Blount (seal). Address: G. T. Blount."

The evidence showed that this note was not paid. The premium due June 15, 1913, was not paid in full, but on that date the insured sent the company $15 in cash and executed what is called by the insurance people a "blue note" for $16.01, payable to the company, and dated June 15, 1913, due ninety days thereafter. This note was accepted by the company as payment for the balance of the renewal premium, and was of the exact form of the note dated September 15, 1913, hereinafter set forth in full; and upon it was stamped in large letters the word "cancelled." On July 28, 1913, at the request of the insured, the company changed the beneficiary from Hattie Blount, who had died, to Mary Blount, who is now Mary Sims, the plaintiff in error. The "blue note" which matured on September 15, 1913, was not paid at maturity, but Blount sent to the company, at its suggestion written to him on September 19, 1913, 24 cents, representing the interest on $16.01, the principal of the note, from June 15, 1913, to September 15, 1913, and executed another "blue note" for $16.01, of date September 15, 1913, due on or before sixty days after date. This "blue note," which was enclosed in the company's letter to Blount of the date of September 19, 1913, was as follows:

"16.01 Bowdon, Ga., RFD # 2, Sept. 15, 1913. On or before sixty days after date, without grace and without demand or notice, I promise to pay to the order of Jefferson Standard Life Insurance Company sixteen and 01/100 dollars, at their home office in Greensboro, N. C., value received, with interest at the rate of six per cent. per annum. This note is accepted by said company at

the request of the maker, together with fifteen and no/100 dollars in cash, on the following express agreement: That although no part of the premium due on the 15th day of June, 1913, under policy No. 6638-J on the life of Gus T. Blount has been paid, the insurance thereunder shall be continued in force until midnight of the due date of said note; that if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due; that if this note is not paid on or before the day it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said company shall retain said cash as part compensation for the rights and privileges hereby granted, and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made; that said company has duly given every notice required by its rules or by the laws of any State in respect to said premium, and in further compensation for the rights and privileges hereby granted the maker hereof has agreed to waive and does hereby waive every other notice in respect to said premium or this note, it being well understood by said maker that said company would not have accepted this agreement if any notice of any kind were required as a condition to the full enforcement of all its terms.    G. T. Blount (seal)." When the company accepted the 24 cents in cash and the "blue note" for $16.01, dated September 15, 1913, it gave the insured its receipt for 24 cents, and returned to him the former "blue note" of date June 15, 1913, and due September 15, 1913. The receipt contains substantially the same stipulations as the note.

The "blue note" for $16.01, dated September 15, 1913, and due November 15, 1913, was not paid at maturity; and thereupon the company entered the following notation on the note: "Policy lapsed for non-payment of this note. Jefferson Standard Life Insurance Co. By W. S. G." On March 6, 1914, the insured mailed a post-office money order to the insurance company for $16.40, which he offered in settlement of the blue note" dated September 15, 1913, and due November 15, 1913, the non-payment of which had caused the policy to lapse. On March 11, 1914, the insurance company wrote to the insured, acknowledging re-

ceipt of the post-office money order and saying: "This settlement can not be accepted unless the enclosed health certificate, properly executed before Dr. L. E. Wilson, is approved by our medical department. Please let us have this certificate as soon as possible. Yours very truly, C. W. Gold, treasurer." The treasurer of the company testified further that he held the money order, pending the receipt of the health certificate requested, until March 27, 1914, when he returned the money order to the insured, with the following letter: "March 27, 1914. Mr. G. T. Blount, Bowdon, Ga., R. F. D. # 1. Re #6638-J. Dear Sir: We are returning herewith money order sent in by you for $16.40, given us in connection with the reinstatement of the above numbered policy. On March 11th we sent you a health certificate to be executed and returned to us, but, as you have not given the matter your attention, we presume you do not care to reinstate this policy. Yours very truly, C. W. Gold, Treasurer." Blount, the insured, died on March 21, 1914, but there was no evidence that any notice of his death was received by the company until after the return of the post-office money order on March 27, 1914, although there was evidence that a letter notifying the company of his death, written at Bowdon, Ga., on March 25, 1914, was received by the company; the record does not show when it was received. It appears, however, that this letter notifying the company of the death of the insured was answered by the company on March 27, 1914, and that blanks were enclosed in its reply letter, upon which the proofs of the death of the insured were to be written, and in this letter the company requested that the proofs be promptly returned, in order that the claim might be passed upon for payment. On April 21, 1914, the beneficiary furnished the company with notice and proofs of the death of the insured. On April 28, 1914, the company wrote to the plaintiff's attorney, declining to pay the amount of the policy and contending that the company, under "Option No. 2," set out in the policy, owed the plaintiff $11.72 only, after deducting the amount due on the lien note of $31.01, dated June 15, 1912. Upon the trial the court directed a verdict for the plaintiff for $11.72 and costs; and the plaintiff excepted.

The main question in this case is: Did the failure of the insured to pay the "blue note" at maturity cause a forfeiture of the policy, when there was no provision in the policy itself (though

there was in the note) stipulating its forfeiture for the non-payment of any note given for premiums thereon? Learned counsel for the plaintiff in error insist that this case is controlled by the ruling in *Arnold* v. *Empire Mutual Annuity & Life Insurance Co.,* *3 Ga. App.* 685 (60 S. E. 470), where it was held that the power to forfeit an insurance policy must be "nominated in the bond," and that the failure to pay a promissory note, taken in payment of a premium on an insurance policy (although it is stipulated in the note that the non-payment of the same at maturity will avoid the policy) will not forfeit the policy where there is no clause in the policy itself providing for its forfeiture for the non-payment of notes; and that where a company claims a forfeiture for the non-payment of a premium note, it must offer to surrender the note; it can not forfeit the policy and keep the note. In our judgment the instant case is clearly distinguishable from the *Arnold* case. The ruling in that case is based upon the proposition that it would be unjust to allow the company to declare a forfeiture without returning the premium note, because the company would still have in its possession a note upon which, if the estate of the insured was solvent, it could collect principal and interest for which it gave nothing in return. In the *Arnold* case the note given was a promissory note, and one that could have been declared upon after its maturity, if unpaid. The same principle is found in the decisions in the cases of *Veal* v. *Security Mutual Life Insurance Co.,* 6 *Ga. App.* 721 (65 S. E. 714); *Fidelity Mutual Life Insurance Co.* v. *Goza,* 13 *Ga. App.* 20 (78 S. E. 735); *Williams* v. *Empire Mutual Annuity & Life Insurance Co.,* 8 *Ga. App.* 303 (68 S. E. 1082), and *Columbian Life Insurance Co.* v. *Mulkey,* 13 *Ga. App.* 508 (79 S. E. 482). In the present case the note itself stipulates that on and after maturity, if unpaid, it shall automatically cease to be a claim against its maker. This was not a collectible promissory note, as was the note in the *Arnold* case. It was, in legal effect, an extension agreement entered into between the insurer and the insured. It can not be said that here, as in the *Arnold* case and other cases which have followed that decision, the company retained a valuable note for which they had given nothing. It has been well said that "the law does not require a vain thing;" and what thing more vain could be imagined than to require the company in this case, before

it is allowed to forfeit the lapsed policy, to give up a note which is no claim whatever against the maker and of no value whatever to the company? In the case of White *v.* New York Life Insurance Co., 200 Mass. 510, 513 (86 N. E. 928), which was very similar to this case, the headnote is as follows: "The insured under a policy of life insurance, on which a premium of $125.25 was payable annually in advance, at the time when one of the premiums became due, instead of paying it, made a cash payment of $31.25 and gave a note for the balance of $94, payable in six months. The note stated that it was accepted by the insurance company at the request of the maker, together with $31.25 in cash, upon an express agreement there set forth, 'that if this note is paid on or before the day it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due; that if this note is not paid on or before the day it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said company shall retain said cash as part compensation for the rights and privileges hereby granted, and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made.' The insured failed to pay the note at maturity, and thereafter died without having paid it. *Held,* that the assured was bound by the agreement contained in the note which he had signed, and that accordingly the policy had become void on non-payment of the note at maturity." In that case, as in this one, two annual premiums had been paid upon the policy. When the third premium became due, on August 19, 1905, it was not paid in cash, but the insured gave his note for the amount due, of that date, and payable on August 19, 1906, and he paid the interest on it to the latter date. On August 19, 1906, he failed to pay the note, but paid interest on it in advance for the entire year, and made a payment of $31.25 in cash and gave a "blue note" (similar in its stipulations to the one in the instant case) for $94, due on February 19, 1907. The insured died on July 12, 1907, and the question was whether the policy was then in force. The court, in its opinion, after quoting the provisions in the "blue note," said: "This agreement, signed by the assured, was binding upon him. The note was not paid, and for that reason, by virtue of the agree-

ment, it ceased to be a claim against the maker. The $31.25 in cash was treated as a consideration for the privilege which the assured had enjoyed; and the rights of both parties in reference to the policy were precisely the same as if this note had never been given, and the payment in cash had never been made. It is impossible to make an agreement plainer than it is by the written language contained in the note. The policy ceased to be in effect after August 19, 1906, except as it was continued by the term insurance already referred to. This extended it for eight months and no more." In our opinion that case is on "all fours" with this case.

In New York Life Insurance Co. v. Slocum, 177 Fed. 842 (101 C. C. A. 56), the Circuit Court of Appeals made a similar ruling. In both the White and the Slocum cases the stipulations in the "blue note" were substantially, if not actually, identical with that in the note in this case. The ruling in the Slocum case was afterwards upheld by the Supreme Court of the United States. Slocum v. New York Life Insurance Co., 228 U. S. 364 (33 Sup. Ct. 523, 57 L. ed. 879, Ann. Cas. 1914D, 1029).

In our opinion the policy in the case at bar ceased to be in effect after June 15, 1913, except as to the right of the insured to have the choice of "options" as provided in the policy. The fact that the insured may have considered the "blue note" as binding upon him and offered to pay it after its maturity is immaterial, when the note itself specifically and clearly states that if it is not paid at maturity, it is not a binding obligation upon the maker. Likewise, and for the same reason, it is immaterial that the company, when it accepted the second "blue note" in renewal of the first, stamped upon the first "blue note" the word "cancelled" and returned it to the insured. The policy itself provides how it can be reinstated after a lapse, and the insured is bound to reinstate it in this manner and in no other; and when, after the lapse of the policy, the insured sent the company a post-office money order in payment of the past-due "blue note," the company did not waive the forfeiture, for it promptly notified the insured that the payment would not be accepted unless he furnished satisfactory proof of his good health as provided by the policy, and upon his failure to furnish such proof within a reasonable time the money-order was returned to him. After the lapse of an insurance policy, in order

for the company to reinstate it, some affirmative act upon the part of the officials of the company, amounting to a waiver of the forfeiture, is necessary. The mere temporary retention by the company of the insured's post-office money order, under the circumstances, did not amount to such a waiver. See *Wallace* v. *Metropolitan Life Insurance Co.,* 10 *Ga. App.* 517, 521 (73 S. E. 698); Slocum *v.* New York Life Ins. Co., supra. Under all the facts of the case, the act of the agency manager of the company in sending, in reply to a letter notifying the company of the death of the insured, blanks for proof of the death, and requesting that they be promptly returned to the company, in order that the claim might be passed upon for payment, was not a waiver of the forfeiture, and did not estop the company from setting up the forfeiture.

The plaintiff contends that, as beneficiary, and because the $15 sent the company on June 15, 1913, and the 24 cents to pay the interest which was sent it on September 15, 1913, were furnished by her, she had a vested interest in the policy, and that a contract made between the insurance company and the insured without her consent could not be binding on her. It must be remembered, however, that when the plaintiff was made beneficiary on July 28, 1913, the premium due June 15, 1913, had not been paid, the time for the payment having been extended by the "blue-note" plan to September 15, 1913. The further extension of time for the payment of the premium, granted on September 15, 1913, was simply a renewal of the extension granted June 15, 1913, and, in effect, was beneficial to the beneficiary, as without such extension the policy would have lapsed sooner than it did. In the second place, the "blue note" did not change or attempt to change the terms of the policy itself, as it expressly stipulated that if the amount due at maturity was not paid, the rights of both parties should be the same as if no agreement had been made. The policy provides that, should "this contract lapse, the insured shall have the choice of options 2 or 3 in the table of the policy." If option 3 had been chosen it would have been necessary to send the policy to the company with a written request for an endorsement showing that such request had been made within 30 days after the lapse of the policy. The policy provided that if no election was made within 30 days after the lapse, it should be continued as stated in option No. 2.

No election was made by the insured. Option No. 2 stated the amount of paid-up insurance payable to the beneficiary upon the death of the insured, and "Note A" in the policy provided that if there was any indebtedness to the company on the policy, the optional amounts of insurance, or of cash guaranteed by the above table, would be reduced in the proportion of said indebtedness to the cash value of the policy, as specified in connection with option No. 1. The insured was indebted to the company in the sum of $31.01, as evidenced by his lien note for that amount, of date June 15, 1912, which had never been paid. After properly subtracting this indebtedness, as provided by the policy, the company owed the beneficiary $11.72, and the court properly directed a verdict for that amount.

In our opinion there was no material error upon the trial, and no good reason is shown why the judgment of the lower court should be reversed.                    *Judgment affirmed.*