## CODY *et al. v.* FIRST NATIONAL BANK OF GAINESVILLE.

1. It is incompetent to prove by parol the contents of a judgment.
2. Where it is a material subject of inquiry as to when a partnership began to transact business as such, books identified as those of the partnership and proved to have been correctly kept, offered for the purpose of showing the date of the first entries thereon, are admissible in evidence as constituting parts of the res gestæ of the matter under investigation.
3. The agent of a corporation is not, in a case to which it is a party, incompetent to testify as a witness in its behalf concerning transactions had between himself, as such agent, and another person since deceased whose legal representative is the other party to the case. Though this court, in this case, at the October term, 1893 (93 *Ga.* 127, 145), announced a contrary view, the question of the bearing of the evidence act of 1889 upon the admissibility of the testimony then under consideration was not really presented for decision.
4. If after an agreement to form a partnership had been made, but before the time fixed by the terms of such agreement for beginning the transaction of the partnership business had arrived, one of the proposed members of the firm borrowed money for his individual use and benefit from a bank, giving therefor a promissory note in the name of the partnership, a subsequent renewal of such note by this member in the partnership

name after the transaction of the partnership business had actually begun, but without the knowledge or consent of his copartners, was not binding upon the partnership, although the bank took the first note in good faith, and under the belief that it was a valid obligation of the partnership, and in like good faith allowed it to be renewed.

5. The fact that the cashier of such bank had "lost money on" the partner who gave and renewed such note was totally irrelevant to the question whether or not the bank could enforce collection of the renewal note as a debt of the partnership.

6. Evidence that members of a partnership, after beginning the transaction of the partnership business, ratified certain unauthorized acts done in its behalf, and in anticipation of its formation, by one who was to become a member of such partnership, is not proof of the ratification of another unauthorized act so done by such person at a time when he had no power to act in its behalf.

7. The charges complained of were objectionable as being to some extent argumentative and as presenting with too much stress and detail the defendant's contentions of fact.

Argued February 11, 12, — Decided March 25, 1898.

Equitable petition. Before Judge Kimsey. Hall superior court. January term, 1897.

*E. P. Davis* and *J. B. Estes,* for plaintiffs.
*H. H. Perry, Dean & Hobbs* and *M. L. Smith,* for defendants.

LUMPKIN, P. J. This case has twice heretofore been before this court. At the October term, 1893, a judgment in favor of the bank was reversed. 93 *Ga.* 127. A second trial in the court below resulted adversely to the bank, and a judgment granting it a new trial was affirmed at the March term, 1896, of this court. 99 *Ga.* 405. At the trial now under review the bank obtained a verdict, and the plaintiffs are again here alleging that the court erred in overruling their motion for a new trial. We shall briefly discuss the material grounds of the same, stating in connection with each the facts essential to an understanding of what is now ruled.

1. The plaintiffs offered to prove by one Norris, that Hopkins, Dwight & Co. had obtained a judgment against the firm of Palmour, Cody & Co., for $800.00, which Jep M. Cody and the legal representatives of J. M. W. Cody had to pay. This evidence was objected to, on the ground that it was incompetent to prove by parol the contents of a judgment. The objection was well taken, and properly sustained.

2. One of the principal matters of controversy was as to the time when the firm of Palmour, Cody & Co. actually began the transaction of its partnership business. The plaintiffs, in this connection, offered in evidence a journal and day-book which they contended had been sufficiently identified as the only set of books which had been kept by the firm, the purpose in tendering these books being to show that the first entries thereon were made on the 7th day of May, 1889. We are of the opinion that these books, if identified as those of Palmour, Cody & Co. and shown to have been correctly kept, would have been admissible as parts of the res gestæ by reason of their connection with the principal fact under investigation. As the judgment below is reversed upon other grounds, it is not now essential to rule whether or not the plaintiffs laid the proper foundation for the introduction of this evidence. Of course, it would be necessary to prove that the books in question were genuine and had actually been kept by the firm in the transaction of its business, and in addition, there ought to be proof showing with reasonable certainty that they were accurately kept. If at the next trial the plaintiffs, by tendering appropriate evidence, come up to these requirements, the books should be admitted. We do not, of course, mean to intimate that, if admitted, they will establish the plaintiffs' contention that the partnership was not a going concern before the 7th of May, 1889, but simply rule that, if introduced at the next hearing, the books may be considered by the jury for what they are worth. While evidence of this character is in the nature of mere declarations, it is, according to Mr. Greenleaf, distinguishable from hearsay, because of its connection with the main fact sought to be established. This author says, "Circumstances, constituting parts of the res gestæ, may always be shown to the jury, along with the principal fact; and their admissibility is determined by the judge, according to the degree of their relation to that fact, and in the exercise of his sound discretion; it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description." 1 Gr. Ev. (15th ed.) § 108, and notes.

3. This court, in *Ullman* v. *Brunswick Co.*, 96 *Ga.* 625, held

that neither the evidence act of 1889 nor the amendments thereto contained anything excluding an agent of a corporation from testifying as a witness, in an action to which it was a party, concerning transactions had between him, while acting in behalf of the corporation, and a deceased person whose legal representative was the opposite party to the case. This decision was made after careful consideration, the court at that time being composed of three Justices. Afterwards, in the case of *Rosser* v. *Ga. Pac. Ry. Co.*, 102 *Ga.* 164, a full bench of six Justices made a decision to the same effect, which was followed in the later case of *Maxwell* v. *Imperial Fertilizer Co.*, 103 *Ga.* 108. At the last trial of the present case, the court permitted Castleberry, the cashier of the bank, to testify to certain conversations between himself and J. M. W. Cody, deceased. This was done over the objection that Castleberry was an incompetent witness as to these matters, because Cody was dead and his legal representatives were parties plaintiff to the case on trial. We affirm the court's action in allowing the introduction of this testimony over the objection stated. It is true that in this identical case, when before this court the first time, we announced a contrary view concerning the legal question above indicated; but, in point of fact, the bearing of the evidence act of 1889 upon the admissibility of the testimony then under consideration was not really presented for decision. We then held that the testimony of Castleberry, concerning an admission made to him by J. M. W. Cody in the lifetime of the latter, was properly ruled out on motion of the plaintiffs. Counsel for the bank, in the argument here, then conceded that under the evidence act of 1889 this testimony was inadmissible, but insisted that it should not have been ruled out because counsel for the opposite side had drawn from the witness the evidence in question. Upon the record as it then stood, we were convinced that it could not be fairly said that the plaintiff's counsel had voluntarily brought this testimony out, and we therefore held that it was rightly excluded, naturally assuming without investigation that the concession made by counsel for the bank was correct. In the light of this explanation, the statement then made by the writer that Castleberry was an

incompetent witness to prove the alleged admission made by the deceased Cody was, in effect, mere obiter. It is therefore not binding as authority upon this court, and should not be treated as an adjudication affecting the rights of any of the parties to the present case.

4. One of the charges of the court now complained of is not in accord with what is laid down in the fourth headnote. It is certainly true that if an individual borrowed money for his private use and gave to the lender a promissory note to which he signed the name of a partnership the formation of which had been agreed upon between himself and others, but which had neither begun nor was authorized to begin the transaction of business as a partnership and the proposed members of which had not held themselves out to the world as partners, the payee of this note could not enforce its collection against the partnership. Under such circumstances, the lender would obviously have no contract with the firm binding upon it as such, and consequently, in making the loan, would have assumed the risk of the contract being repudiated by the partnership, in the event the borrower had no authority to sign the firm's name to the note. No renewal of such a contract could have vitality; and this is so because it would rest on no valid consideration, the lender parting with nothing of value to obtain it. It was contended by the plaintiffs that John L. Palmour, at a time when the firm of Palmour, Cody & Co. was, as to the public, not an existing concern, borrowed money from the bank for his individual use and gave for it a note which he executed in the name of Palmour, Cody & Co., as a firm. Upon the assumption that this contention is true, no renewal of this note by Palmour in the firm's name, without the knowledge or consent of his partners, could in law bind them, although made after the partnership was actually transacting business as such. If the facts were as claimed by the plaintiffs, the bank, in the first instance, got nothing for its money except the individual obligation of Palmour to repay it, and was bound at its peril, when it let him have the money, to ascertain whether or not he was authorized to sign the name of Palmour, Cody & Co. to the note. No amount of good faith on its part could render

binding upon J. M. W. Cody and Jep M. Cody a contract which Palmour had no right whatever to make in their behalf, nor could any renewal thereof stand upon any better footing than the original undertaking. As to them, the first note was a forgery, pure and simple. Had Palmour, while the partnership was actively engaged in business, borrowed money from the bank in the firm's name, secretly intending to use it for his individual benefit and in fact so using it, but had nevertheless given to the bank a note which he signed in the name of his firm, the question presented would be altogether different.

It must not be understood from anything said above that we are undertaking to decide what the truth is as to the issues in dispute. We are simply endeavoring to state what the law is, in order that at the next hearing of this case the jury may apply it to the facts as found.

5. The court permitted the introduction of evidence tending to show that Castleberry, the cashier of the bank, had "lost money on" Palmour in certain other transactions. We are entirely unable to perceive what this had to do with any question involved in the case, and accordingly hold that the admission of this evidence was erroneous.

6. Certain acts done by Palmour at a time when, according to the plaintiffs' contention, he was not authorized to bind the proposed partnership, were ratified by J. M. W. Cody and Jep M. Cody after the transaction of the partnership business had actually begun. Plaintiffs' counsel requested the court to charge, in this connection, that the ratification by these two persons of some of the acts done by Palmour in behalf of the contemplated partnership and in anticipation of its formation should not be treated as proof of ratification by them of other unauthorized acts done by Palmour at a time when he had no power to bind the firm. The court declined to give this request. It embraced, we think, a correct and pertinent proposition of law, and should have been given to the jury, or its equivalent stated to them.

7. Some of the charges excepted to in the motion for a new trial are open to criticism as being, to some extent, argumentative and as laying too much stress and detail upon the defend-

ants' contentions of fact. We deem it unnecessary to say more in this regard, however, being confident that at the next trial the judge's instructions to the jury will be entirely free from any of the objectionable features to which we here refer.

*Judgment reversed. All concurring, except Cobb, J., absent.*