## HOLSTON, adm'r, v. SOUTHERN RAILWAY CO.

1. The agent of a corporation is not, in a case to which it is a party, incompetent to testify as a witness in its behalf concerning communications had between himself, as such agent, and another person, since deceased, whose legal representative is the other party to the case.

2. Statements made by one person in the presence of another, to the effect that the latter was alone responsible for injuries he had received, may, if silently acquiesced in by him, amount to an admission on his part that such statements are true.

3. The charge of the court with reference to the impeachment of witnesses and

the tests to be applied in determining what credit should be given to their testimony was not erroneous for any reason assigned.

4. The evidence fully sustained the verdict returned by the jury, and no error was committed by the trial judge which would warrant this court in setting it aside.

Argued November 13, — Decided December 10, 1902.

Action for damages. Before Judge Reece. City court of Floyd county. April 2, 1902.

*Dean & Dean,* for plaintiff. *Shumate & Maddox* and *Harris, Chamlee & Harris,* for defendant.

FISH, J. The plaintiff in error, "Nathan Holston, as administrator of the estate of Sam Holston, deceased," brought an action for damages against the Southern Railway Company, basing his alleged right to recover upon certain statutes of the State of South Carolina, in which State the homicide of the plaintiff's intestate occurred. It appeared upon the trial that the decedent, in company with two others, had been stealing a ride on the defendant's passenger-train, he having gotten upon one of the trucks of the mail-car. The plaintiff sought to establish his contention that either the conductor or some other employee of the company, on discovering the presence of the decedent, shot at him with a pistol and wounded him in the arm, causing him to fall from the trucks under the wheels of the moving train. His companions both swore to this murderous assault having been committed upon him by either the conductor or the flagman on the train. The railway company, on the other hand, undertook to show that no effort of any kind was made by any of its employees to force the decedent to leave the train; that none of its employees even knew of his presence thereon; and that he was killed while attempting to alight in order to join his companions, who had left the train as it neared the point where the homicide occurred. The jury returned a verdict in favor of the company, and the plaintiff made a motion for a new trial, based on various grounds. It was overruled, and he excepted.

1. It appears that the decedent was horribly mangled by the wheels of the train, one arm and a leg being crushed. He was not, however, killed outright. A surgeon in the employ of the company attended him, and to this surgeon he made a statement as to the manner in which he met with his injuries. Objection was made

42

to the testimony of the surgeon regarding this statement, on the ground that, being an agent of the company, he was an incompetent witness, so far as any conversation between himself and the decedent was concerned.   This point is settled by the decision of this court in the case of *Ullman* v. *Brunswick Co.*, 96 *Ga.* 625, wherein it was held that " There is nothing in the evidence act of 1889, or the amendments thereto, which excludes [an] agent of a corporation from testifying as a witness in a case to which the corporation is a party, concerning transactions had between such . . agent in behalf of the corporation and a person since deceased whose executor or administrator is the other party to the case." See also *Cody* v. *First National Bank*, 103 *Ga.* 789, and cases cited.

2.  Objection was also made to the testimony of certain witnesses introduced by the defendant, as to what was said to them by one of the companions of the decedent, in his presence, to the effect that in attempting to get from underneath the car his coat " hung " and caused him to fall; that he and his companions "were all beating their way"; that "they would have gone through" if the declarant had been "listened to"; that he "did the shooting, and if the others had stuck to him, he would have whipped the crowd and rode on any way."   It appears from the testimony of these witnesses that the declarant also exhibited a pistol and explained that he and one other than the decedent were riding " on the front part of the engine, and the engineer put them off."   It is insisted by counsel for the plaintiff in error that the evidence objected to was inadmissible for the purpose of impeaching the declarant, whose testimony had been taken by interrogatories, since no proper foundation had been laid by " having first examined him with reference to said statements, by calling his mind to the time, place, person, and circumstances attending such statements."   In this position we fully concur.   See Civil Code, § 5292.   But we can not agree with counsel in their further contention that the evidence in question should have been excluded on the idea that it did not come within the provisions of the Civil Code, § 5195, that " Acquiescence or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission."   If, in point of fact, as claimed by the plaintiff, an employee of the company shot the decedent and caused him to fall under the wheels of the train, it would have been but natural for him, if in

the possession of his mental faculties, to indignantly deny any statement made by a third person in his presence that his injuries were due to an altogether different cause for which he alone was responsible. And, of course, if he tacitly admitted the truth of such a statement, this would amount to strong evidence going to show that the contention of the plaintiff was without any foundation of fact. So the real question presented is : Does the record before us disclose that the mental or physical condition of the decedent, at the time the above-mentioned statements were made in his presence, was such as to relieve him of all obligation of noting and correcting them, if false or inaccurate ? The physicians who attended him stated that, in their opinion, he was fully conscious and knew all that transpired while he was being cared for by them, though he was suffering more or less pain up to the time of his death, even after they had administered drugs to relieve him of his sufferings. Quite a number of witnesses, including one introduced by the plaintiff, testified that the decedent talked rationally and stated in detail the manner in which he met with his injuries, etc. Indeed, other than the fact that his limbs had been terribly mangled, there was nothing to indicate that his mental condition was such as to preclude the idea that he fully understood all that was said to him or in his presence. This being so, the testimony objected to was admissible; for it was the province of the jury to say whether or not, under all the circumstances, the decedent was really conscious of all that transpired, and was called upon to deny statements made in his presence, which, if untrue, would operate to his prejudice in the event he should recover from his injuries and seek to hold the railway company responsible therefor. It is proper, in this connection, to also deal with the contention of the plaintiff in error that the trial judge erred in charging the jury to the effect that if some one other than an employee of the company fired a pistol, and the decedent became excited or frightened in consequence and fell from his position under the car, then the company would not be liable in damages. Counsel for the plaintiff insist that there was no evidence, save the testimony last above referred to concerning the statement made by a companion of the decedent to the effect that he was the one who fired the pistol, to warrant any such charge; and that it could not have been predicated on this testimony as original evidence showing that a person not connec-

ted with the company did the firing, because this testimony, if pertinent at all, was competent only for the purpose of impeaching as a witness the fellow-traveler of the decedent. In ruling, as we have, that the testimony was admissible as tending to establish an admission on the part of the decedent, we have practically disposed of the criticism made on the charge of the court to which exception is taken. Furthermore, we find, upon an examination of the record before us, that there was other evidence which fully warranted a charge based on the theory that some one not in the employ of the company fired a pistol, and that the decedent became alarmed and fell while attempting to alight from the train.

3. In one ground of the motion for a new trial is set forth an excerpt from the charge of the court as to the burden of proof and the weight to be given to the testimony of a witness when it is in conflict with that of another or of other witnesses. This instruction was in the abstract correct, and no complaint is made that it presented an erroneous view of the law on the subject. It is, however, excepted to on the ground that it does not embrace the proposition that "the credit to which the testimony of a witness is entitled may be affected by his interest or want of interest." A correct charge is not to be characterized as incorrect simply because of an omission to also charge in the same connection an additional pertinent legal proposition. _Roberts_ v. _State_, 114 _Ga._ 450, 453, and cases cited. Where a trial judge omits to charge something which he should, his omission to so charge should be excepted to, and not a correct instruction which he actually gave. It appears that the trial judge did tell the jury they were to consider "the conduct of witnesses on the stand, their interest or want of interest." This he did in connection with an instruction to the jury as to the impeachment of a witness by proof of general bad character or of contradictory statements made by him, and error is assigned on this portion of the charge, because (1) the conduct of witnesses on the stand and their interest or want of interest "are not matters for impeachment," but simply "go to the credit of the" witnesses, and (2) the judge failed to qualify his instruction that a witness might be impeached by proof of contradictory statements, by adding that such statements "must have been previously made as to matters relevant to his testimony and to the case." The first of these points is not a fair criticism on the charge. The court did not tell the

jury that the conduct of a witness on the stand and his interest or want of interest were "matters for impeachment," but simply stated to them, in effect, that in determining whether or not a witness had been impeached by the testimony of other witnesses, both his and their conduct on the stand, as well as his or their interest in the outcome of the case, might properly be taken into consideration. We know of no better test which a jury could employ. Not to qualify the charge as above indicated was, however, erroneous. Civil Code, § 5292. But it does not follow that a new trial should have been granted, for an examination of the brief of evidence convinces us that the error thus committed worked no injury to the plaintiff. One of his witnesses testified that he reached the decedent about five minutes after he was injured, and was told by him that "the railroad men shot at him." An effort was made by the company to impeach this witness by proving he had previously made contradictory statements concerning what the decedent had told him on the occasion just mentioned. Such statements, if made, certainly related to a matter "relevant to his testimony and to the case." No attempt appears to have been made by either side to impeach any other witness by proof of contradictory statements as to any less pertinent and relevant matter; so the jury could not have made an improper test in undertaking to apply the instructions given them on this branch of the case. (See, in this connection, the second headnote to the case of *Young* v. *State*, 95 *Ga.* 456, which sets forth a ruling applicable to the case now before us.) In fact, the only other instance of any effort to show that any witness had made previous statements conflicting with his testimony at the trial was an attempt on the part of the plaintiff to establish that a witness for the defendant had, on a former hearing of the case, testified to something which was material, but which he omitted to state on the last trial and denied having testified to on such former hearing.

The trial judge further instructed the jury: "If a witness is successfully impeached, you will disregard his testimony, unless he is corroborated by other unimpeached testimony in the case, or circumstances." Complaint is made that this charge was not in harmony with the provisions of the Civil Code, § 5295, because "the rule stated by the court on this point only applies in cases of willful false swearing." In view of the decision of this court in

*Smith* v. *State,* 109 *Ga.* 479, in which case the above-cited section of the code was under construction, there is no merit in this contention on the part of the plaintiff.

4. As will have been gathered from what has already been said, the evidence adduced on the trial was conflicting. It apparently preponderated, both as to quantity and quality, very greatly in favor of the defendant company. Every member of its train crew was produced, and each emphatically denied shooting at the decedent or even knowing of his presence on the train. Numerous witnesses who had no connection with the company testified that, immediately after the decedent was run over by the train, he related to them the manner in which he received his injuries, making no claim of having been shot at, but stating that in endeavoring to leave the train of his own accord, in order to join his companions, his coat became caught by something under the car, and caused him to fall from the trucks. In the light of all the testimony and the circumstances, it is not to be wondered at that the jury accepted as true the account of the catastrophe which these disinterested witnesses swore the decedent had himself given; and the verdict is not one which should be lightly set aside. It is, doubtless, true, as is insisted by counsel for the plaintiff in error, that there was no evidence warranting a charge based on the theory that a pistol was fired by an employee of the company who neither shot at nor intended to frighten the decedent; but the error of charging on this theory should not, we think, work a reversal of the judgment below. The entire charge of the court is before us. His honor first explicitly explained to the jury the law with regard to the right of a carrier to expel from its train a trespasser, and distinctly told them that if they believed any employee of the company "did shoot at said Sam Holston, thereby alarming and frightening him" and causing him to fall, "then the defendant company would be responsible, notwithstanding the said Sam Holston may have been stealing a ride on defendant's train at the time." Thus it will be seen the plaintiff's theory of the case was fully covered. His honor next charged upon the theory that the pistol was fired "by some one not connected with the train as employee," and then added the instruction excepted to, viz.: "Even if a member of the train crew fired, and you so find, if the firing was not at the deceased, and not done to frighten or injure him, and he became

frightened and fell, plaintiff can not recover." The fact that some one fired a pistol was conclusively established. The plaintiff's contention was that either the conductor or the brakeman did the shooting. The charge just quoted really cut as much against the company as it did against the plaintiff; for it was based upon the assumption that the evidence would warrant a finding that the pistol was fired by some employee other than the conductor or brakeman. Be this as it may, however, there is no reason to apprehend that the jury were misled by this charge, to the prejudice of the plaintiff, and based their finding upon the totally absurd supposition that although the conductor or brakeman fired pointblank at the decedent he was not seen by either of them, and therefore the one who fired the pistol had no intention of injuring or frightening him.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., absent.*