### 2077. WILLIAMS, guardian, *v.* EMPIRE MUTUAL ANNUITY AND LIFE INSURANCE COMPANY.

1. If a policy of life-insurance which on its face acknowledges the receipt of the first premium is (without fraud, accident or mistake) delivered to the insured by the company or its authorized agent, and the first premium is not in fact paid in cash, it will be conclusively presumed that the company intended to waive the payment of the first premium in cash and to extend credit to the insured. But the acknowledgment of the receipt of the premium, as contained in the face of the policy, may be explained by showing that, contemporaneously with the delivery of the policy, the insured executed his promissory note, payable to the company, for the premium, and that, by the terms of the policy, failure to pay the premium note at maturity would forfeit the policy. In such a case the insurance would become effective upon the delivery of the policy, subject

to forfeiture for breach of the condition subsequent, namely, the non-payment of the note; but, like other forfeitures for failure to comply with conditions subsequent, the company may waive the forfeiture arising from failure to pay the note.

2. Where, in such a case, the company takes a note for the premium, and it is provided in the policy that if the note is not paid at maturity the policy shall be void, but the note represents the premium for an entire year, the company, by insisting upon the payment of the note in full after its maturity, will be held to have waived its right to forfeit the insurance during the year, especially where the note is an interest-bearing obligation. The law, following equity, will not allow the company either to collect or to assert its right to collect a full year's premium out of the insured, and yet declare the policy void at an earlier date .

3. Where, however, a company allows a policy acknowledging receipt of the first premium to be delivered to the insured by its agent, under an arrangement whereby the company extends the credit for the insurance premium to the agent, and the agent, to protect himself, takes from the insured a promissory note, under seal, payable to the agent personally, the company will not be allowed to declare the policy forfeited for non-payment of the note given by the insured to the agent, under a clause in the policy which provides that if a note be taken for the premium and the note be not paid at maturity, the policy shall be void; although the agent transferred the note of the insured to the company in payment or as security for the company's account against the agent for the amount of the premium.

(a) Where a sealed instrument is payable to a designated person, it is not permissible to show by aliunde testimony that in the transaction the payee was acting as agent for a third person, so as to make the liability of the payer a liability to that third person, instead of a liability to the person designated as payee.

4. It is error to give an instruction which is wholly irrelevant to the issues between the parties and unsupported by the evidence. Proof that a notice was sent to the insured, calling upon him to pay a premium, or notifying him when the next premium is due, may be admitted, to show a waiver of forfeiture on the part of the insurance company, even though it does not appear that the insured actually received such notice.

5. The agent of a corporation primarily is not incompetent to testify as a witness in behalf of the corporation concerning communications between himself as such agent and another, since deceased, whose assignee or transferee is the opposite party to the case, even though such latter party be insane.

6. A person not a party to the suit, but who is interested in its result, is not competent to testify as to transactions or communications with an insane or deceased person, in an action brought by the assignee or transferee of the insane or deceased person, although, as agent of the corporation, he might be generally competent as a witness if he were not personally interested in the result of the suit.

7. A forfeiture occurs, if it results at all, immediately upon a breach of the condition of the contract on which it is based; and, forfeitures not being favored in law, a waiver of the forfeiture, once made, can not be re-

called. The demand for payment in full of a future premium subsequently to the breach of a condition which would have entitled the insurer to insist upon a forfeiture of the contract will be held to be a waiver of the forfeiture, and be treated as an acknowledgment that the delinquent policy-holder is still entitled to the benefits conferred by his contract.

8. In case a note is accepted in payment of the premium upon a policy of insurance, and in the policy it is stipulated that failure to pay such note at maturity will void the contract, the retention of the note and an attempt to collect it in full after its maturity is a waiver of the right of forfeiture. An insurance company which takes a note for a premium may, upon default in payment of the note, forfeit the policy of insurance, if the contract so stipulates, but it can not forfeit the policy and collect the entire note.

9. If the agent of the insurance company, who is not authorized to accept anything but cash in payment of a premium, takes a note for the first premium and thereby becomes personally liable to the company for the cash, and the company holds him individually responsible for the amount of the premium, the non-payment of the note does not forfeit the policy. An insurance company has the right to accept the assumption of personal liability on the part of its agents in lieu of payment of a premium in behalf of another, to the same extent that it must look to its authorized agent to deliver or pay over to the company premiums actually paid to him in cash. An insurance company, in the absence of any provision to the contrary in its charter, may extend credit, in the payment of insurance premiums; and such credit may be extended to an agent who has assumed the payment of a premium in behalf of the insured.

DECIDED SEPTEMBER 28, 1910.

Action on insurance policy; from city court of Atlanta—Judge Reid. June 16, 1909.

*Hines & Jordan,* for plaintiff.

*Maynard & Hooper, Perry S. Pearson,* for defendant.

RUSSELL, J. William Harrison Williams secured a policy of insurance with the Empire Life Insurance Company, dated August 5, 1905, and was given a receipt for the first annual premium on the policy, which stipulated that the regular premium up to the 5th day of August, 1906, was paid. The receipt contained a stipulation that to be valid it must be signed by the president or the secretary, and countersigned by an authorized agent of the company. It was countersigned on August 9, 1905, by Langford, Jones & Co., agents. The date upon which the secretary signed the receipt does not appear. On August 3, 1905, William H. Williams executed and delivered a note for $39.70, payable to the order of Langford, Jones & Co. This note was not paid at its maturity on December 1,

1906. Thereafter it was sent to the Bank of Soperton for collection, and was in the hands of this bank at the time that Williams, the insured, met his death, in the latter part of July, 1906. George W. Williams, as guardian for Roy Williams, the beneficiary of the policy (who was a brother of the insured and who is non compos mentis), brought suit upon the contract of insurance. The insurance company defended upon the ground that the first annual premium was never paid by the insured or by any one for him; that a note was given for the first annual premium, which was never paid, and that by the terms of the policy the failure to pay the note at maturity operated to forfeit the policy, and that, on account of the forfeiture, the policy was not in force at the time of the death of the insured. The company admitted a prima facie case in behalf of the plaintiff, and took upon itself the burden of establishing its freedom from liability. The jury found in favor of the defendant, and the plaintiff excepts to the judgment refusing a new trial.

The first question which arises in the case is the determination of the relation which the receipt bears to the policy. Is it independent of, or a part of the contract of insurance? The view of the other members of the court on this question is stated in the first headnote; personally the writer goes further. Nothing is better settled than that receipts generally are subject to explanation or denial as evidence of payment, and that parol evidence is competent for this purpose. If the receipt in this case can not be considered a part of the contract, then the instruction of the judge, of which complaint is made, was correct; because no one is estopped by a receipt, for it is such a writing as is subject to be varied or explained by the party executing it. But inasmuch as the payment of the first premium is an essential prerequisite to the creation of a contract of insurance, and the defendant admits in its answer that the contract was entered into and executed as alleged by the plaintiff, it seems to me that the receipt becomes a part of the contract. As such, it is not subject to be varied by parol; and consequently I think that the judge erred in charging the jury that they were to determine whether or not the first premium was in fact paid. Of course, the antecedent evidence upon that subject was inadmissible, but that point is not made in the first exception, and will be dealt with later. I think that where a policy of life-insurance acknowledges receipt of the premium, proof that

it has not been paid will not be permitted. We all agree that, upon the ground of public policy, the insurer should not be permitted, after the mouth of the insured has been forever sealed by death, and perhaps the only means of proving the contrary has thus been destroyed, to assert that he entered into a contract with the deceased without any consideration. Such a rule would remove every guarantee that the beneficiaries of a policy would be paid, and put a premium upon frauds. We do not mean to hold that the insurance company may not show that the policy was not in fact delivered, or that the insured came into possession of the contract wrongfully and fraudulently, but where it is admitted that a contract of insurance was, in the regular course of its business, delivered to the insured, it is to be conclusively presumed that the evidence of the insurance company's obligation was executed and delivered upon consideration which the company at least deemed sufficient. An admission that the contract was made is incompatible with the assertion that the first premium, upon the payment of which the existence of the contract depends, was not paid in some way. The exact point does not seem to have been decided in this State, but in Illinois, New Jersey, Missouri, and North Carolina the question now before us has, we think, been correctly ruled. See Illinois Central Ins. Co. v. Wolf, 37 Ill. 354 (87 Am. D. 251); Teutonia Life Ins. Co. v. Muller, 77 Ill. 22; Germania Fire Ins. Co. v. Muller, 110 Ill. 190-193; Teutonia Life Ins. Co. v. Anderson, 77 Ill. 384; Massachusetts Benefit Life Asso. v. Sibley, 156 Ill. 411 (42 N. E. 137); Basch v. Humboldt Mutual Co., 35 N. J. 429-431; Dobyns v. Bay State Beneficiary Asso., 144 Mo. 95 (45 S. W. 1107); Kendrick v. Mutual Benefit Life Ins. Co., 124 N. C. 315 (32 S. E. 728, 70 Am. St. R. 592); Greer v. Mutual Life Ins. Co., 132 N. C. 542 (44 S. E. 28). Furthermore, the evidence is uncontradicted in this case that the note was taken in payment of the premium, not by the insurance company, but by Langford, Jones & Co., if the consideration of the note was the amount required to pay the premium. The note was dated August 3. The date of the receipt was August 9. The note was not payable to the insurance company, or even to Langford, Jones & Co. as agents. It is admitted that Langford, Jones & Co. are indebted to the company for moneys representing premiums on policies of insurance written by them, and the fact that a note was taken by Langford, Jones &

Co., and by them indorsed, is evidence that it was in the first instance payable to them individually; and the testimony shows that it not infrequently happened that premiums were charged to them.  If the note was taken by the insurance company upon Langford, Jones & Co.'s indorsement merely as partial payment to the company of amounts collected by that firm upon premiums, including that of Williams, then there would be no legal significance, so far as a waiver of the forfeiture is concerned, in an effort of the company to collect the note through the Bank of Soperton.  The effort of the insurance company to collect the note would not be evidence of any waiver of the forfeiture, but merely evidence of the insurance company's desire to collect the note which they had purchased, or held as collateral from the original payees.  This, however, would establish the fact that Williams paid the premium, or at least that Langford, Jones & Co. paid it for him.  On the other hand, if the note was intended to be made payable to the insurance company, then the effort to collect it after its maturity was a waiver of the right to forfeit the policy for the non-payment of the note, as it was stipulated in the policy that the insurance company had a right to do; for reasons which we will point out further on in this opinion.

It is complained that the judge erred in charging the jury upon the right given the insured by the policy to reinstate himself upon certain conditions therein named; for the reason that it was irrelevant to any issue raised by the pleadings, and therefore any insructions upon the subject of reinstatement were necessarily misleading and confusing to the jury.  We think this point is well taken.  The issues between the parties were three: (1) Was the note given by the insured to the company in payment of the first premium?  (2) Did the agents agree to assume and pay this premium?  (3) Even if the note was payable to the company, was there a waiver of the forfeiture of the policy?  These were the only issues, and it was therefore immaterial whether there was any provision for reinstatement or not.  The plaintiff did not insist that he had taken the proper steps to be reinstated.  Counsel for the defendant insists that the provision with regard to reinstatement of the policy is immaterial, in view of the fact that by the terms of the policy the company is continually notifying its policy-holders to reinstate, and this, taken in connection with the sending out of

the notice of the second year's premium, is explanatory of the
policy of the company and that the sending of the notice as to
the second premium is simply for the purpose of continuing the
invitation and directing the attention of the insured to the rein-
statement provision.   In regard to this it is only necessary to say
that there is nothing in the notice sent out which would sustain this
view of the case.   The notice simply requested the payment of the
second premium; and, from the fact that no reference was made
to any failure on the part of the insured to pay the first premium,
it is necessarily corroborative of the plaintiff's contention that the
first premium had been paid by Langford, Jones & Co., acting for
the insured.   The instruction to the jury to determine and consider
whether the insured received the notice with reference to the second
premium is likewise irrelevant to any issue presented in the plead-
ings, because the forfeiture of the policy, if waived by the sending
of the notice at all, was completely waived by the action of the in-
surance company, and not dependent upon any affirmative action
on the part of the insured.   No act on the part of the insured
could create a waiver of the company's right to forfeit the policy.
This waiver was necessarily dependent upon some act on the part
of the insurer.

It is insisted that the court erred in permitting W. W. Reed, a
witness for the defendant, to testify, over the objection of the coun-
sel for plaintiff: "The agents took a note from the insured.  .  .
It was forwarded by the agents to the company.   The company
took that [the note] simply as an extension of time that the agents
granted that party for an extension of time for the settlement of
that claim."   The objection to the testimony was that the witness
was incompetent to testify to transactions with the insured, who
was dead, the plaintiff being insane, and that it could not prove
a contract with the insured, who was dead, which would render
the policy sued on void, said witness being the secretary of the
company at the time of said transaction, and now its president.
Under section 5269 of the Civil Code of 1895, the witness, Reed,
was not incompetent, either by reason of the fact that the maker
of the note was dead, or that the plaintiff in the case was insane.
The witness did not purport to testify to any transaction or com-
munication either with the deceased or with the party who was
insane.   Even if he had testified to a transaction or communica-

tion with the deceased, the evidence would have been admissible under the rulings in *Cody* v. *First National Bank,* 103 *Ga.* 789 (30 S. E. 281), and *Holston* v. *Southern Railway Co.,* 116 *Ga.* 656 (43 S. E. 29), in which it was held that the agent of a corporation is competent to testify as to transactions with a deceased party, even though the personal representative of the decedent is the adverse party to the corporation.

We think the court erred in overruling the objection to the testimony of the witness, S. E. Jones, for the reason that he had a personal interest in the result of the suit. Civil Code, § 5269, par. 4. If the jury found in favor of the plaintiff, Jones would necessarily be liable to the insurance company for the amount of the note, either as money collected from the deceased and not paid over to the company, or as indorser upon the note, which he took without authority of the company, instead of collecting the premium. If the jury found in favor of the defendant, Jones would not be liable, according to the undisputed testimony, for a greater amount than the proportionate part of the premium from August 3 to December 1, even if he was liable for anything. And the testimony of Jones, to which the objection was offered, concerned his transaction with the deceased, of whom the plaintiff was the transferee or assignee, and as to whom, therefore, the plaintiff stood in the same relation as if he had been his legal representative.

Conceding that the jury had a right to find that there had been no payment of the first premium, either by the deceased or by any one in his behalf, the insurance company had the right, under the terms of the policy, to forfeit the contract upon the failure of Williams to pay his note at maturity, and waived its right by sending the note to the bank and leaving it there and attempting to collect it, as the evidence shows, some months after the forfeiture could have been insisted upon. The company clearly waived its right to insist upon the forfeiture, by attempting to collect the note instead of returning or attempting to return it to the maker; because, as we held in *Arnold* v. *Empire Insurance Co.,* 3 *Ga. App.* 685 (60 S. E. 470), an insurer can not in any case insist upon a forfeiture and at the same time retain a note taken in payment of an unpaid premium, upon the non-payment of which the forfeiture depends. This would be getting something for nothing. A waiver when once made can not be recalled, because the law does

not look with favor upon forfeiture of insurance policies, and will seize upon any circumstance which indicates an election to waive a forfeiture.

But not only does the attempt to collect the note after the insurer might have insisted upon a forfeiture of the policy indicate a waiver of its right on the part of the insurer, but the sending of the notice as to the second premium must be taken as proof of the fact that the delinquent policy-holder was acknowledged by the company to be entitled to all the benefits conferred by his contract. In the present case, although the note for the first premium had been past due since December 1, 1905, the company still recognized that Williams was insured by it, and that the past-due note had been taken in lieu of the cash, because on July 19, 1906, only fifteen days before the second premium would be due, the company mailed him the following premium notice: "Take notice. Your annual premium on policy No. 7194 will be due August 5, 1906, as follows: premium $39.70, on or before which date payment must be made to the home office of the company. If the premium is paid quarterly the amount will be $......, or if semi-annually, $...... . [Signed] William W. Reed, Secretary. Note. Premiums are payable to the company at its office in Atlanta, and no payment of the same shall be valid if paid to an agent or any other person whatsoever, unless such person is possessed of and turns over to the payee a receipt signed by the president, countersigned by himself, as evidence of payment to him. According to the policy contract, members must pay their premiums on or before the day on which they fall due, and in the event of their failure to do so, their policy of insurance shall be deemed forfeited and of no effect, except where otherwise expressly stipulated in the policy." Now if the company elected to forfeit the policy, as it had the right to do when the note was not paid on December 1 (for the forfeiture occurred immediately upon the failure of the insured to pay the note, according to the terms of the policy: Washburn v. Union Central Life Ins. Co., 143 Ala. 485 (38 So. 1011) ), then it could not consistently notify the deceased on July 19, 1906, over seven months after the note became due, that his annual premium would be due on August 5 following, and especially call the insured's attention to the fact that his policy would be deemed forfeited if that premium was not paid on or before August 5. There was no claim, so far as

appears from the evidence, that this notice was sent by mistake, and there is no evidence which indicates that if the payment of the premium had been tendered, it would not have been accepted. It is apparent to us, therefore, that no construction can be placed upon this evidence other than that the company had elected to waive its right to forfeit the policy after the non-payment of the note; and the case is controlled by the ruling of this court in *Farmers Mutual Life Protective Association* v. *Elliott,* 4 *Ga. App.* 342 (61 S. E. 493), in which we held: "Even if, under the by-laws of a benevolent fraternal association or assessment insurance society, no affirmative action is necessary in order to enforce the forfeiture of a policy of insurance, for non-payment of dues or assessments, as the case may be, the subsequent demand for the payment of such dues or assessments is a waiver of the forfeiture, and an acknowledgment that the delinquent policy-holder is still entitled to the benefits conferred by his contract with the association." In that case the insurer was a fraternal association, and not a regular insurance company, but this would not affect the rule, and even if there was no other error in the judgment refusing a new trial, we should feel constrained to reverse the judgment, because the verdict of the jury was contrary to the evidence in this respect. The evidence in regard to the sending of the notice is undisputed. It was sent three days before the insured was killed. It may not have been received by him, but certainly an insurer is estopped from asserting that he was attempting to collect a premium, due at a future date, upon a contract which he had a right to declare void, and had declared to be void, and which was, therefore, utterly worthless. No one who has entered into a contract should be permitted to blow both hot and cold, and least of all should this privilege be allowed to life-insurers; because in most instances the contingency upon which the liability of the insurance company depends leaves the beneficiaries of the deceased illy prepared to enforce their rights.

In any view of the evidence in this case, the non-payment of the first premium, if not waived, was not satisfactorily established. And inasmuch as the defendant had the burden of establishing the fact of non-payment of the premium, in order to rebut the plaintiff's prima facie right of recovery, the evidence was not sufficient to authorize the verdict rendered in its favor. If the agents of the company, without authority, took the insured's note, instead

of collecting the amount of the premium in money, and the amount thus represented was chargeable to the agents, and was charged to them by the company with the agents' consent, then the insured's premium was paid, and there was no default. If, on the other hand, the note was accepted by the company, after its indorsement by the agents, as an extension of the time within which payment of the premium might be made, as contended by the defendant, the right to forfeit the policy was' waived; so that in either event the defendant failed to show any reason why the policy should be adjudged to have been forfeited. Consequently the judge erred in refusing to grant a new trial.

Further, the note in this case was under seal, and the doctrine is well established that as to sealed instruments it can not be shown that the parties were acting merely as agents, when the agency is not disclosed. The note was payable to Langford, Jones & Co., and not to the company.        *Judgment reversed.*