CASEY ENTERPRISES, INC. and d/b/a Pendley Hills Hardware and Minit Check Grocery, Fite H. Casey, Jr., Plaintiffs-Appellees,

v.

AMERICAN HARDWARE MUTUAL INSURANCE COMPANY, Defendant-Appellant.

No. 80-7148.

United States Court of Appeals, Fifth Circuit. Unit B

Sept. 8, 1981.

Paul M. Talmadge, Jr., T. Cullen Gilliland, Stephen E. O'Day, Atlanta, Ga., for defendant-appellant.

C. James Jessee, Jr., Barry L. Roseman, George E. Duncan, Jr., Atlanta, Ga., for plaintiffs-appellees.

Before TJOFLAT and FRANK M. JOHNSON, Jr., Circuit Judges, and SCOTT *, District Judge.

CHARLES R. SCOTT, District Judge:

Fite H. Casey, Jr. and Casey Enterprises, Inc. brought three actions in the Superior Court of Dekalb County in the state of Georgia against American Hardware Mutual Insurance Company (hereinafter 'American Hardware' or 'insurer') to recover on a Special Multi-Peril insurance policy for a fire loss. These cases were consolidated and, upon petition by the insurer, removed to the United States District Court for the Northern District of Georgia. The insurer denied liability claiming that the policy was void as a result of material misrepresentations in the policy application and proof of loss statement. The district court found that the insurer had waived its defense of material misrepresentation by making payments for the fire loss pursuant to the policy and collecting premiums on the policy after becoming aware of the alleged misrepresentations. The district court, therefore, granted plaintiffs' motion for summary judgment and awarded plaintiffs the sum of $455,522.73 in damages including $147,522.73 in interest.

Fite H. Casey, Jr. owned commercial property in Georgia which he leased to his closely-held corporation, Casey Enterprises, Inc. On July 15, 1971, Mr. Casey, as president of Casey Enterprises, Inc., submitted an application to an American Hardware agent for a Special Multi-Peril insurance policy to cover the commercial property. The agent made notes concerning the application information and subsequently transferred this information to the application forms.

On the policy application, the Dekalb County Federal Savings and Loan Association was listed as the mortgagee of the insured premises. The holder of the second mortgage in the amount of $214,000 was not listed. Although the title to the insured property was in the name of Fite H. Casey, Jr., Casey Enterprises, Inc. was listed as the insured and owner on the application. The application indicated that all property and liability losses in the past three years should be listed. Mr. Casey noted only a burglary loss when in fact there had been several other losses during that period. After the application was completed, the insurer's underwriter obtained a copy of Mr. Casey's

---

* District Judge of the Middle District of Florida, sitting by designation.

previous Special Multi-Peril insurance policy with the Insurance Company of North America (hereinafter 'I.N.A.') on which both Fite H. Casey, Jr. and Casey Enterprises, Inc. were named insureds. On August 9, 1971, the underwriter received information on all losses that had been paid under Mr. Casey's previous insurance policy with I.N.A. The insurer's underwriter subsequently approved the issuance of the policy effective July 15, 1971 and expiring on July 15, 1974. On July 7, 1973 a fire occurred on the insured premises. Plaintiffs notified American Hardware of the fire and filed a claim of $478,131.94 for damages and lost earnings. During July or August of 1973 the insurer discovered that title to the insured property was in the name of Fite H. Casey, Jr. On August 23, 1973 the insurer paid $100,000 to "Casey Enterprises, Inc., et al" on the fire loss. The insurer did not request a proof of loss statement as required under the policy. In August and September of 1973, the insurer approved expenditures by the insured from the $100,-000 advance payment on the fire loss to prepare the property for rebuilding. In November of 1973 the insurer discovered that a second mortgage existed on the insured property. American Hardware, thereafter, continued to collect monthly installment payments from the insured toward the annual premium on the policy until the expiration of the policy on July 15, 1974. During this time the insurer never indicated that the policy was void due to material misrepresentations.

On January 23, 1974 Mr. Casey submitted a proof of loss although such a statement had not been requested by the insurer. The proof of loss statement indicated that only a first mortgage existed on the insured premises. On April 6, 1974 Mr. Casey's attorney responded by letter to the insurer's counsel in regard to the insurer's objection to the sufficiency of the plaintiffs' proof of loss statement. The letter addressed the insurer's objections to the proof of loss and indicated that a second mortgage existed on the insured property. In March, May and June of 1974 American Hardware made crime coverage payments on claims submitted by Mr. Casey under the policy.

Plaintiffs commenced suit on July 2, 1974 seeking the balance of payments due on the fire loss under the Special Multi-Peril policy. American Hardware filed a counterclaim contending that the entire policy was void and that it was entitled to restitution of all payments made on the policy. In support of its position, the insurer asserted that Mr. Casey had made material misrepresentations and omissions in the policy application including the failure to list Fite H. Casey, Jr. as the owner of the insured property, the omission of several prior insurance claims, and the omission of the second mortgage held on the property. The insurer also contended that Mr. Casey had made material misrepresentations and omissions in the proof of loss including the omission of the second mortgage and an overstatement of the loss.

The district court concluded as a matter of law that the omission of Fite H. Casey, Jr. as owner and a named insured was a mutual mistake and ordered the policy reformed to include Fite H. Casey, Jr. as a named insured. The district court further held as a matter of law that the insurer waived any defense based on the misrepresentation of prior insurance losses by issuing the policy with actual knowledge of those losses. Similarly, the district court determined as a matter of law that the insurer waived any defense based on non-disclosure of the second mortgage in the policy application by collecting premiums after it had actual knowledge of the second mortgage. Finally, the district court held as a matter of law that the insurer could not rely on errors in the proof of loss because the proof of loss was submitted gratuitously and there was no evidence that the misstatements in the proof of loss were fraudulent. The court dismissed the insurer's counterclaim for recission and restitution and granted plaintiffs' motion for summary judgment with an award of damages in the amount of $455,522.73 including $147,522.73 in interest.

■ A motion for summary judgment may be granted only when "there is no

genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a motion for summary judgment should be granted, the trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Aulds v. Foster*, 484 F.2d 945, 946 (5th Cir. 1973); *Pennsylvania v. Curtiss Natl. Bank*, 427 F.2d 395, 401 (5th Cir. 1970).

Applying this standard to the case before us, we conclude that the district court properly granted plaintiffs' motion for summary judgment. No material factual issues were presented and plaintiffs were entitled to a judgment as a matter of law.

■ In determining the applicable substantive law in this diversity suit we must look to the Georgia conflict of laws rule. *Ranger Ins. Co. v. Culberson*, 454 F.2d 857, 860 (5th Cir. 1971); *Maryland Cas. Co. v. Williams*, 377 F.2d 389, 293–93 (5th Cir. 1967). Under Georgia law the place of the delivery of the insurance contract controls. *Ranger Ins. Co. v. Culberson, supra; Pink v. AAA Highway Express, Inc.*, 191 Ga. 502, 13 S.E.2d 337, aff'd, 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152 (1941). The insurance contract at issue in this case was executed and delivered in the state of Georgia and, therefore, Georgia law governs the determination of the substantive issues.

■ Georgia law provides that:
Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
1) Fraudulent; or
2) Material to the acceptance of the risk, or to the hazard assumed by the insured; or
3) The insurer in good faith would . . . not have issued the policy or contract . . . if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.
Ga.Code § 56–2409. An insurer is not required to establish fraud to prevent an insured from recovering where the misrepre-

sentation, omission, concealment or incorrect statement in the insurance policy application is material. *United Family Life Ins. Co. v. Shirley*, 242 Ga. 235, 248 S.E.2d 635, 637–38 (1978). A misrepresentation or omission is material if it would be a consideration in the insurer's determination to issue the policy. *Bourne v. Balboa Ins. Co.*, 144 Ga.App. 55, 57, 240 S.E.2d 261, 263 (1977).

■ American Hardware first argues that the policy is void because of Mr. Casey's failure to list all prior insurance claims in the application. Prior to the issuance of the policy, however, the insurer's underwriter received a copy of Mr. Casey's previous Special Multi-Peril policy and was informed of all prior insurance losses under the previous insurance policy. Nevertheless, the insurer approved and issued the policy. Issuance of a policy with full knowledge of omissions or misrepresentations estops the insurer as a matter of law from subsequently claiming that the policy is void on the basis of such omissions or misrepresentations. *Fireman's Fund Ins. Co. of San Francisco v. Standridge*, 103 Ga.App. 442, 119 S.E.2d 585 (1961); *Phenix Ins. Co. of Brooklyn v. Searles*, 100 Ga. 97, 27 S.E. 779 (1896). Consequently, the insurer has waived its right to rely on the omission of the prior insurance losses in the application since the insurer issued the policy with actual knowledge of those losses.

■ The insurer further contends that the policy is void because of the alleged material misrepresentation of the ownership of the insured property in the insurance application. Although Casey Enterprises, Inc. was listed on the application as the owner of the premises, title to the property was actually in the name of Fite H. Casey, Jr. The insurer's agent, however, was aware that Casey Enterprises, Inc. was a closely-held corporation and that Mr. Casey was the president of the company. Moreover, prior to the issuance of the policy, the insurer's agent examined a copy of Mr. Casey's previous Special Multi-Peril insurance policy in which both Casey Enterprises, Inc. and Fite H. Casey, Jr. were

named insureds. Shortly after the insured property was damaged by fire on July 7, 1973, the insurer discovered that title to the property was in the name of Fite H. Casey, Jr. On August 23, 1973 the insurer paid $100,000 to "Casey Enterprises, Inc., et al" on the fire loss. The insurer has not challenged the propriety of the district court's order reforming the policy to include Fite H. Casey, Jr. as an insured. Even assuming that the failure to list Fite H. Casey, Jr. as the owner of the insured property amounted to a material misrepresentation, the insurer waived that defense by continuing to demand and collect consideration on the policy after learning of Mr. Casey's ownership interest. *Peninsular Cas. Co. v. McCloud*, 47 Ga.App. 316, 170 S.E. 396 (1933); *Sovereign Camp W. O. W. v. Bowman*, 40 Ga.App. 536, 150 S.E. 436 (1929).

■ The insurer's next defense is the omission of the second mortgage from the insurance application. It is undisputed that the insurer was aware of the second mortgage on the insured premises in November of 1973. The insurer, however, continued to demand and collect premium payments on the policy until the policy's expiration on July 15, 1974. Furthermore, the insured continued to recognize the validity of the policy and made payments in March, May and June of 1974 for various crime coverage claims on the policy submitted by Mr. Casey. Where an insurer demands and collects consideration for a policy, he waives any misrepresentation of which he has knowledge and is estopped from raising a defense based on such misrepresentation. *Peninsular Cas. Co. v. McCloud*, 47 Ga.App. 316, 170 S.E. 396 (1933); *Sovereign Camp W. O. W. v. Bowman*, 40 Ga.App. 536, 150 S.E. 436 (1929). The insurer contends that it was merely collecting monthly installments on an annual premium already due. Although failure to return premiums collected on a policy does not constitute a waiver, *Golden v. National Life & Accident Ins. Co.*, 189 Ga. 79, 88, 5 S.E.2d 198 (1939), continued collection of payments on an installment basis for an annual premium amounts to a waiver of any misrepresentation of which the insurer has knowledge.

*Williams v. Empire Mutual and Annuity Life Ins. Co.*, 8 Ga.App. 303, 68 S.E. 1082 (1910). It is, therefore, clear that the insurer waived its right to rely on the omission of the second mortgage from the application by continuing to collect consideration on the policy with full knowledge of the existence of the second mortgage.

■ The insurer further argues that Mr. Casey's failure to include the second mortgage in the proof of loss voided the insurer's obligations under the policy. The insurer, however, made a payment of $100,000 on the fire loss in August of 1973 without requiring a proof of loss. The insurer assured Mr. Casey that the balance of the recovery for the fire loss would be paid, and in reliance on that assurance Mr. Casey proceeded to make expenditures in rebuilding the property. On January 23, 1974 Mr. Casey voluntarily submitted a proof of loss to the insurer. In a letter to the insurer dated April 6, 1974 Mr. Casey's attorney disclosed the second mortgage on the insured property which had been omitted from the proof of loss. Under Georgia law misstatements in a proof of loss will not form the basis for a defense against the insured unless the insurer shows that the misstatements were made fraudulently. *Phenix Ins. Co. of Brooklyn v. Jones*, 16 Ga.App. 261, 85 S.E. 206 (1915). The insurer has alleged no fraudulent misrepresentations with respect to the proof of loss submitted by Mr. Casey. The district court found no evidence in the record that any of the misstatements in the proof of loss were fraudulent and concluded that, in any event, the insurer waived its right to rely on errors in the proof of loss by giving assurances that the fire loss would be paid and making a payment on the fire loss without requiring a proof of loss. Since the proof of loss was submitted gratuitiously and there is no evidence that it contained fraudulent misstatements, the errors in the proof of loss cannot be a basis for voiding the policy. Moreover, by giving assurances that the fire loss would be paid without requiring a proof of loss, the insurer waived its right to rely on errors in the proof of

loss. *Laughinghouse v. First Ins. Co.*, 123 Ga.App. 189, 179 S.E.2d 675 (1971).

In summary, although several material misstatements may have existed in the policy application, the insurer waived all defenses based on such misstatements by continuing to recognize the validity of the policy after becoming aware of the misstatements. It is undisputed that the insurer issued the policy after learning of all prior losses under Mr. Casey's previous policy and that the insurer continued to collect premiums after discovering that Fite H. Casey, Jr. was the true owner of the insured property. Moreover, the insurer does not dispute the fact that it kept the policy in effect and collected premiums for seven months after discovering the second mortgage on the insured property. The insurer assured Mr. Casey that the fire loss would be paid and made a $100,000 payment on the fire loss without requiring a proof of the loss. The insurer neither demanded recission of the property nor stated that the policy was void due to material misrepresentations prior to the commencement of this action. Because the facts concerning waiver or estoppel here are not in dispute, Mr. Casey and Casey Enterprises, Inc. were entitled to a judgment as a matter of law. *Massachusetts Mutual Life Ins. Co. v. Mayo*, 81 F.2d 661 (9th Cir. 1936); *General Accident Fire and Life Ins. Co. v. Schero*, 151 F.2d 825 (5th Cir. 1935).

In granting plaintiff's motion for summary judgment, the district court included in the award of damages the sum of $147,522.73 as interest at seven percent from March 25, 1974 (the date that payment was due on the fire loss) until the entry of the district court's order. The insurer contends that the district court erred in awarding interest for the period prior to the entry of the judgment because the amount of damages was in dispute. Under Georgia law a claimant is only entitled to interest as a matter of law from the date that the claim becomes liquidated. *Norair Engineering Corp. v. St. Joseph's Hosp. Inc.*, 147 Ga.App. 595, 249 S.E.2d 642 (1978). It is within the discretion of the factfinder, however, to include interest in an award of damages on an unliquidated claim from the date of the breach. *Norair Engineering Corp. v. St. Joseph's Hosp. Inc.*, supra; *Bennett v. Tucker & Pennington*, 32 Ga.App. 288, 123 S.E. 165 (1924); *Western & A. R. Co. v. Brown*, 102 Ga. 13, 29 S.E. 130 (1897). Consequently, it was within the trial judge's discretion to include in the award of damages an amount equal to the legal interest from the time that the contract was breached until the entry of the judgment.

AFFIRMED.